## 10590.

### MARTIN v. LABOON.

#### (107 S. E. 320)

1.  APPEAL AND ERROR—BURDEN ON APPELLANT TO SHOW PREPONDERANCE OF EVIDENCE IS AGAINST FINDINGS IN EQUITY.—In equity causes the burden is on appellant to satisfy the Supreme Court that the preponderance of the evidence is against the findings of fact by the Circuit Judge, particularly when the testimony has been taken before him.

2.  BOUNDARIES—EVIDENCE HELD TO SHOW THAT DISPUTED AREA WAS INCLUDED IN ORAL AGREEMENT FOR SALE OF THE LAND.—In an action for reformation of an oral contract for sale of land which had been first rented to purchaser, and for specific performance where there was a disputed boundary, evidence in the record *held* to show that the disputed area was included in the parcel covered by an oral agreement of sale.

3.  SPECIFIC PERFORMANCE—IMPROVEMENTS PLACED ON LAND BY PURCHASER COUPLED WITH POSSESSION AND PART PAYMENT HELD TO TAKE LAND SALE CONTRACT OUT OF THE STATUTE OF FRAUDS.—In purchaser's action for reformation of both oral and written agreements for sale of land and for specific performance, where purchaser had previously gone into possession as vendor's tenant, valuable improvements made upon the land by purchaser, capable of appraisement and compensation, coupled with possession and part payment of the purchase price, *held* to take the case out of operation of the statute of frauds by part performance and to present a clear case for specific performance.

4.  SPECIFIC PERFORMANCE—ORAL CONTRACT HELD NOT TOO INDEFINITE AS TO TERMS OF PAYMENT.—An oral contract for the sale of land held not too indefinite as to terms of payment in view of certain specific provisions, and the rule that, when no specific maturity date is fixed by contracts, payment will be presumed due within a reasonable time or on demand, so that such objection should not prevail; the contract being sufficiently definite in other respects.

5.  SPECIFIC PERFORMANCE—CONTRACT FOR SALE OF LAND FROM WHICH SURVEYOR COULD NOT SET OUT COURSES AND DISTANCES HELD TOO INDEFINITE.—A writen contract for the sale of a parcel of land which is so indefinite as to description that it would be impossible for a surveyor to take the contract and lay off the exact area by courses and distances is too indefinite for specific performance.

7—s. c. 116

6. EVIDENCE—WHERE DESCRIPTION IN WRITTEN SALE AGREEMENT IS TOO INDEFINITE, IT MAY NOT BE AIDED BY PAROL EVIDENCE.—Where a written contract for sale of land is too indefinite in describing the parcel, parol evidence cannot be allowed to supplement the description.

7. REFORMATION OF INSTRUMENTS—WRITTEN CONTRACT FOR SALE OF LAND MAY BE REFORMED TO CONFORM TO ORAL CONTRACT.—Where there was a sufficient oral contract between vendor and purchaser for sale of land taken out of the statute of frauds by part performance and a written contract which through error failed to conform to the prior oral agreement, a court of equity may decree a reformation of the written contract in the absence of controlling reasons to the contrary.

8. REFORMATION OF INSTRUMENT—COURT MAY GRANT REFORMATION OF INSTRUMENT AND SPECIFIC PERFORMANCE THEREOF IN ONE SUIT.— Where an oral contract for the sale of land was taken out of the statute of frauds by part performance, and the written contract of sale was insufficient, and through error did not conform to the oral agreement, the Court may reform the instrument and grant specific performance in the same suit.

Before MEMMINGER, J., Anderson, April term, 1920. Reversed.

Action for specific performance by A. R. Martin against J. B. LaBoon. From judgment for defendant the plaintiff appeals.

*Messrs. Quattlebaum & Cochran,* for appellant, cite: *Contract sufficiently definite under Statute of Frauds:* 6 L. R. A. (N. S.) 956; 22 Wend. 148; 45 N. C. 65; 31 S. C. 606; 33 S. C. 376; 1 Brev. 546; 21 S C. 481; 25 R. C. L. 651; L. R. A. 1917-A 564. *Failure to show definite time for payment should not defeat contract:* 77 S. C. 511; 25 R. L. L. 219, Sec. 18. *After contract of sale was executed Martin was no longer a tenant, but became a purchaser and acts thereafter were in that capacity:* 77 S. C., 511; 21 S. C. 481. *Court will reform contract to conform to real agreement:* L. R. A. 1917, A. 564-594; 25 R. C. L. Sec. 358, p. 713.

*Mr. A. H. Dagnall,* for respondent, cites: *Description must identify property to be sold:* 33 S. C. 384. *And boundaries must be fixed where part to be sold is portion of a larger tract:* 234 Pa. 100 83 Atl. 54. *Reformation and Specific Performance:* L. R. A. 1917-A. 563; 18 Ann.

ORIGINAL PLAT BY
W. H. SHEARER, C. E.
31 MCH. 1920

Cas. 914. *Necessary elements to warrant specific perform-*
*ance:* 101 S. C. 178; 32 S. C. 533. *Contract void under*
*the Statute cannot be reformed:* L. R. A. 1917-A, 563;
18 Ann. Cas. 914; 102 Mass. 24; 104 N. C. 16; 5 L. R. A.
810, *Equity will reform but not make an instrument:* 23
R. C. L. 309. *And will not relieve a party from his own*
*negligence:* 4 L. R. A. 483; 9 S. C. 35. *Parol evidence*
*may be admitted to show mistake but not to set up a dif-*
*ferent instrument:* 2 McC. Eq. 116; 4 Rich. Eq. 313.
*Party writing the contract will not be presumed to have*
*made a mistake against his own interests:* 1 McC Eq. 491.
*Oral agreement merged in writing:* 1 McC Eq. 491. *Part*
*performance can only be established where possession was*
*under the agreement:* 21 S. C. 492; 25 R. C. L. 263; 36
Cyc. 661. *Specific performance in the discretion of the*
*Court:* 109 S. C. 262.

The Shearer Plat referred to in the opinion is herewith
reproduced on a reduced scale on page 99.

May 16, 1921.

The opinion of the Court was delivered by Mr. Justice
Cothran.

In the early part of the year 1919 the plaintiff, A. R.
Martin, rented from the defendant, J. B. La Boon, a certain
parcel of land, a portion of a tract containing 83¾ acres
which belonged to La Boon. It is conceded on all sides
that the western boundary of this rented parcel was a line,
not accurately defined, but generally following a path which
led from Rosamond's mill to the Babb house on La Boon's
other land, and thence, roughly, in the same direction from
the Babb house to a public road. It appears that the parties
had had some negotiations relating to a purchase of this
property by Martin, but he went into possession as a tenant,
the understanding being that later in the year a trade might
be consummated.

Accordingly about March 1st an agreement was reached and a written contract was entered into by the parties of that date which provided: (1) That La Boon should sell to Martin "a certain tract of land estimated between 30 and 40 acres," in the township, county and State named, being known as a part of the V. L. La Boon farm, adjoining lands of Merritt, Rosamond, and La Boon (the defendant) to a certain large oak corner; (2) that Martin should pay La Boon therefor $60 per acre "for as many acres as said land measures," payable $300 on November 1, 1919, at 8 per cent., that the lines were to be established and the land measured by March 1, 1920, and that "when this parcel of land is measured" Martin should pay La Boon $10 per acre for the excess over 30 acres as a further cash payment, and should assume the Fretwell debt and give note and mortgage for the remainder of the purchase price with interest from March 1, 1919. No maturity date for this balance was fixed.

The relations of the parties were thus by this contract transformed from those of tenant and landlord to those of vendee and vendor, provided, of course, a valid contract was consummated.

The plaintiff, Martin, continued in possession, living in the house, making certain improvements upon the premises and cultivating not only the land covered by his lease, but some additional land which he claims was included within the boundaries of his purchase and to which the defendant, La Boon, made no objection.

In October, 1919, La Boon employed a surveyor, with the approval of Martin, to run the dividing line and estimate the area of the parcel of land. A beginning was made at the oak corner and continued partly around the tract until the iron pin in the Rosamond mill path, the conceded terminus or beginning of the dividing line, was reached. Martin contended that the line from that iron pin should be run as a straight line following the western boundary of the rented

land, along the mill path, passing near the Babb house and onto the public road. La Boon contended that it should run as a straight line, leaving the house and premises which were occupied by Martin on the west side of the line and onto the public road about 600 feet east of the corner claimed by Martin, the result of which would have thrown all of the house and premises and about ten acres on La Boon's side of the line. They could not agree. Martin ordered the surveying party off the premises.

Shortly after maturity of his note for $300, payable November 1, 1919, as the cash payment upon the purchase, Martin paid it, and on January 25, 1920, instituted this action. The complaint contains two causes of action: (1) Specific performance of the written contract, the only question being as to the location of the dividing line; (2) upon the contract verbally made, for reformation of the written contract to conform, and specific performance of such reformed contract, offering to pay the agreed purchase price according to the terms of the contract. The defendant answered, pleading the statute of frauds, denying that he intended to sell the plaintiff more than the area included within the lines contended for by him, alleging that the contract should have been so drawn as to express that intention, offering to convey the 38.53 acres so included, claiming rent for the year 1919, and demanding that the plaintiff be ejected from the premises.

The case was heard by Judge Memminger upon testimony taken before him in open court. His decree refuses reformation, refuses specific performance, and dismisses the complaint, holding that the contract is so wholly vague and indefinite as to location and area, time of payment, and otherwise that the Court is not warranted in decreeing specific performance; that the testimony as to the western boundary line is "almost entirely wholly vague or unreliable," so much so that it is not only inadmissible, but insufficient, to warrant a reformation of the contract; and furthermore

that he knows of no respectable case which holds that a plaintiff in specific performance can first explain or reform a contract and then secure its performance.

It should have been stated that the area of the tract according to the plaintiff's contention of the location of the dividing line is 45.2 acres; the defendant's, 38.53 according to the Lee plat, and 35.84 according to the Shearer plat.

We are mindful of the rule that in equity causes the burden is upon the appellant to satisfy this Court that the preponderance of the evidence is against the findngs of fact by the Circuit Judge, particularly when the testimony has been taken before him, and approach the discussion of the facts with the greatest respect for the ability of the learned Circuit Judge, with whose conclusions we find ourselves at variance.

It appears very clearly, from the terms of the written contract alone, that the parties were contracting with reference to a specific parcel of land, estimated to contain between 30 and 40 acres, the general location of which was understood and described in the contract, which refers to it as "a certain tract of land," "this parcel of land." The definite establishment of the lines and the ascertainment of the area were to be determined by a survey to be made by March 1, 1920, a year from the date of the contract. The controversy has arisen as to the precise location of the tract. The defendant owned a tract containing 83¾ acres, roughly in the shape of a parallelogram, the long side lying east and west. The parcel to be sold was to be cut off from the eastern part by a dividing line running approximately north and south. There appears to be no controversy as to the other lines, and the point of dispute is as to the location of this dividing line. With greater particularity than has been stated above, the plaintiff claims the dividing line to be a straight line beginning at an iron pin in the path leading from the Babb house to Rosamond's mill, thence S. 29° 45' W. 21.53 chains (1,421 feet) to a

stake in the public road, practically identical with the western boundary of the parcel covered by Martin's lease for 1919; the defendant, a straight line beginning at the same corner, thence S. 8¼° W. 29.39 chains (1,939.74 feet) to a stake in the same road 587 feet east of the stake claimed by the plaintiff to be the corner. This leaves a triangle containing 9.36 or 6.67 acres, the bone of contention between them. Within this disputed area are the dwelling house, outbuildings, and concededly the best land upon the place.

The first question to be determined is whether or not this disputed area was included in the parcel covered by the oral agreement between the parties which preceded the execution of the written contract.

That it was we entertain no doubt whatever. The plaintiff went into possession of the place as a tenant, renting the entire eastern portion of the tract from the line contended for by him, with the exception perhaps of a small area between the old road and the new road. The defendant admits that the lease covered the land up to that line. The understanding was that the defendant would go in as a tenant, but might buy later in the year, naturally referring to the parcel that he was renting. About March 1 he concluded to buy, and the parties came together upon the terms of the sale. He was buying a home; he was a renter, evidently a man of limited means; he was obligating himself to the extent of $2,500 to $3,000. It is inconceivable that he would have so obligated himself for a place upon which there was no dwelling house, with the prospect ahead of him of going further in debt for a home. There was no suitable location upon the other part of the parcel for a house. Twenty out of the 38 acres in it are swamp land. The best land is upon the disputed area. After the contract was signed the plaintiff dug a well and made other improvements upon the premises within sight of the defendant and to his knowledge without objection. The

plaintiff discussed with the defendant other improvements compatible only with his ownership of the property, without objection on the part of the defendant. Both the plaintiff and the defendant later applied for loans upon their respective properties, and when the loan appraisers went upon the premises of both parties, the defendant being present and making no protest, the plaintiff's parcel was put down as containing 43 acres, including the dwelling house and appurtenances, the latter being appraised along with the land as the plaintiff's interest. If the plaintiff's interest did not include the disputed area, it belonged to the defendant, who would naturally desire as full appraisement, covering all he owned, as he could secure. The defendant went along with the plaintiff and pointed out the dividing lines before the contract was signed. He made statements to disinterested persons as to the location of the line. After the execution of the contract the plaintiff continued to work the land up to the dividing line as he contends for it—and the defendant worked the land upon the other side. If the defendant's contention that the dividing line was east of the disputed area be sustained, then after the execution of the written contract the defendant was entitled to rent for the disputed area, which included the dwelling house and appurtenances; yet we hear of no effort or even claim by him for such rent. The provision in the contract that the plaintiff should be entitled to the rent for 1919 applied only to the land covered by the contract, which the defendant contends did not include the disputed area.

Upon this conclusion three questions arise: (1) Independently of the written contract and of the master of reformation of the written contract, is the plaintiff entitled to specific performance of the oral contract which preceded the execution of the written contract? (2) Independently of the matter of reformation of the written contract, is the plaintiff entitled to specific performance of the contract evidenced by the written paper? (3 Is the

plaintiff entitled to a reformation of the written contract so as to make it conform to the prior oral agreement and to specific performance of the written contract when so reformed?

The first question: The conclusions of fact which we have reached, as above stated, are that prior to the execution of the written contract the plaintiff and the defendant agreed upon a purchase and sale of the particular parcel which included the disputed area, the dividing line between it and the defendant's other portion of the 83-acre tract being the line contended for by the plaintiff, indicated on the Shearer plat as S. 29° 45′ W. 1,421 feet, the entire parcel bargained for, containing 45.2 acres, having such marks, courses, and distances as are indicated upon said plat; that the terms of sale were as are set forth in the written contract; that the plaintiff went into possession of the premises so bargained for, made valuable improvements thereon, and paid a substantial portion of the purchase price.

The respondent, La Boon, the seller, suggests that the possession of Martin, the buyer, may be referred to his tenancy, and for that reason is not such an act of part performance as will take the case out of the operation of the statute of frauds, and cites 25 R. C. L. 263, in support of that proposition. In close sequence to the quotation made we find this:

"Although continued possession, because of the fact that it may be referable to the antecedent right and not necessary to the new right or estate created by the contract, is insufficient to prevent the operation of the statute, yet the contrary is the case when accompanied by some further acts, such as payment of the purchase price or making substantial and valuable improvements which characterize the continued possession and make it referable to the new relation created by the contract." *McMillan v. McMillan,* 77 S. C. 511, 58 S. E. 431.

It is held in reference to improvements that they must have been inconsistent with the relation which formerly existed and consistent only with the new. In the case at bar the defendant admits that under the rental agreement he was obligated to dig a well for the tenant, but that after the contract was executed the plaintiff at his own cost and with the knowledge of the defendant did so. This appears fully to answer the requirements. It may be, as indicated by a long line of authorities cited in 25 R. C. L. 265, that the improvements must have been such as are not capable of fair appraisement and compensation; the vendee being relegated to his action at law. However, we hold that such improvements as are so capable of appraisement and compensation, coupled with possession and part payment of the purchase price, present a clear case for specific performance.

It is further objected that the oral contract is indefinite as to the terms of payment. The payment of $300 on November 1, 1919, as a cash payment, was sufficiently definite as to that. The assumption of the Fretwell debt was sufficiently definite, as that is certain which can be made certain. The Fretwell obligation was in evidence. As to the remainder of the purchase price, there was no definite term fixed, but the plaintiff testified that he was to have the same terms with reference to that as was fixed in the Fretwell matter; and, irrespective of this, when no specific maturity date is fixed by the contract, the payment will be presumed to be due within a reasonable time or on demand. *McMillan v. McMillan*, 77 S. C. 511, 58 S. E. 431; 25 R. C. L. 219; *Thompson v. Dulles*, 5 Rich. Eq. 370; *Prothro v. Smith,* 6 Rich. Eq. 332; 29 A. & E. Enc. 37, holding that this objection should not prevail where the contract is sufficiently definite in other respects. This question is therefore answered in the affirmative.

The second question: Standing alone, the written contract is too indefinite as to the description of the parcel of the land to justify a decree for specific per-

formance.  It would be impossible for a surveyor to take
that contract and lay off the exact area by courses and
distances which the parties may have had in mind.  *Safe
Deposit Co. v. Diamond Co.,* 234 Pa. 100, 83 Atl. 54, L. R.
A. 1917A, 596.  Nor can parol evidence be allowed where
it "relates to the very important particular, the description
of the thing to be conveyed."  *Hyde v. Cooper,* 13 Rich.
Eq. 250; *Church v. Farrow,* 7 Rich.  Eq.  378;  *Mims v.
Chandler,* 21 S. C. 480; *Kennedy v. Gramling,* 33 S. C. 367,
11 S. E. 1081, 26 Am. St. Rep. 676.

The third question:  If, as we have concluded, there
was a prior oral agreement between the parties, def-
initely fixing (except for the actual establishment of
it by survey) the dividing line, and it appears, as we have
also concluded, that the written contract so fatally failed in
the description of the parcel of land as to defeat the remedy
of specific performance, it is clear that the written contract
through some one's blunder has failed to conform to the
prior oral agreement.  The defendant in his answer admits
so much, "that the contract should have been so written by
the plaintiff as to have embraced the real agreement between
the defendant and plaintiff," and proceeds to give his ver-
sion of the "real agreement."  This clothes the Court of
Equity with the power to decree a reformation of the writ-
ten contract, and it will do so, unless there be some controll-
ing reason to the contrary.

It is declared by the Circuit Judge and argued by
respondent's attorney that there is "no respectable
case which holds that a plaintiff in specific perform-
ance can first explain or reform a contract and then get
it performed."  This question has  frequently been pre-
sented and many courts have taken the view announced, as
will be seen in an exhaustive note to *Allen v. Kitchen*
(Idaho) L. R. A. 1917 A, 563.  After stating this to be
the "strong inclination" of the English Court, Judge Story
says:

"But it is extremely difficult to perceive the principle upon which such decision can be supported consistently with the acknowledged exercise of jurisdiction in the Court to reform written contracts and to decree relief thereon. In America Mr. Chancellor Kent, after a most elaborate consideration of the subject, has not hesitated to reject the distinction as unfounded in justice, and has decreed relief to a plaintiff standing in the precise predicament." 1 Story, Eq. Jur. (14th Ed.) § 233.

See, also, an interesting note to this section confirming Judge Story's opinion and citing many authorities.

It has also been suggested that equity will not allow parol testimony offered for the purpose of reforming a written contract when the subject of the contract is one which the statute of frauds requires to be evidenced by writing. Many cases are cited in the note to L. R. A. 1917A, sustaining this proposition. But it is conceded that this does not apply to cases taken out of the statute by part performance. "The doctrine of part performance is applicable to reformation; if there has been a part performance, the case is taken out of the statute, whether a deed, mortgage, or other contract is involved." Above note, page 572 of L. R. A. 1917A. The plaintiff is therefore entitled to a reformation of the written contract to conform to the prior oral agreement between the parties and to specific performance of it when so reformed.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to said Court for such further proceedings as may be necessary to carry into effect the conclusions herein announced.