## 11051

### LANE v. BELL LUMBER CO.

#### (115 S. E., 207)

1. FIXTURES—FAILURE TO REMOVE TRAMROAD WITHIN TIME LIMITED BY TIMBER DEED HELD NOT TO CONVERT SUCH ROAD INTO A FIXTURE. —Where a timber deed permitted the grantee to remove his logging tramroad within a certain time, the tramroad did not become a fixture, and failure to remove the same within the time agreed did not convert it into a fixture, in the absence of a subsequent agreement making it so.

2 FIXTURES—AGREEMENT BETWEEN PARTIES CONTROLLING.—Where an article of personal property belonging to one person is annexed to the freehold of another person, the question whether it shall be regarded as a fixture or not may, as between the parties, be controlled by agreement.

3. FIXTURES—FAILURE TO REMOVE PERSONAL PROPERTY UNDER LICENSE TO DO SO HELD NOT TO CONVERT THE PERSONALTY INTO A FIXTURE.— Where personal property belonging to one person is attached to the land of another under circumstances preserving its character as personal property, the fact that a subsequent deed of the land contains a license to remove the personalty within a specified time without any condition of forfeiture does not change the status of the personalty to that of a fixture on failure to remove the property within the terms of the license.

4. FIXTURES—BUYER OF LAND HELD NOT BONA FIDE PURCHASER ENTITLING HIM TO ASSERT OWNERSHIP TO TRAMROAD.—One is not a bona fide purchaser entitling him to assert ownership to a tramroad on the land purchased, where the deed contains no reference to the tramroad, and a prior recorded timber deed recited that the grantee therein had the right to remove the tramroad within a given time, and where the existence of the tramroad itself was sufficient to call for inquiry which would have disclosed its ownership.

5. FIXTURES—CONVEYANCE OF LAND, NOT DESCRIBING PERSONALTY NOT CONSTITUTING FIXTURE, HELD NOT TO CONVEY SUCH PERSONALTY.— Where a tramroad was constructed on land under an agreement which negatived any claim that the material in the tramroad became a fixture, a subsequent deed of the land, which in no way referred to or described the tramroad, did not convey such tramroad to the grantee.

Note: On effect of agreement to prevent fixtures from becoming a part of realty as to purchaser, see note in 19 L. R. A., 443.

6. EVIDENCE—PAROL EVIDENCE HELD INADMISSIBLE TO SHOW THAT PERSONAL PROPERTY PASSED BY DEED OF LAND.—In replevin to recover, the materials in a tramroad removed from plaintiff's land by defendant, parol evidence that the tramroad equipment was included in a deed of realty to plaintiff's grantor was inadmissible, where such deed made no mention thereof.

7. EXECUTORS AND ADMINISTRATORS—ARTICLES OF PERSONAL PROPERTY ON LAND WHICH DO NOT CONSTITUTE FIXTURES HELD TO PASS TO THE ADMINISTRATOR OF THE OWNER OF THE LAND, AND NOT TO HIS HEIRS.—Where a tramroad was constructed on land under an agreement by which the material in the road did not become a fixture, such material on the death of the owner of the land and on the failure of the owner of the tramroad to remove the same under circumstances working a forfeiture passed to his administrator, and not to his heirs.

8. EXECUTORS AND ADMINISTRATORS—QUESTION OF WAIVER BY ADMINISTRATORS OF CLAIM TO FIXTURES HELD NOT DETERMINABLE IN ACTION BY HEIR, WHERE ADMINISTRATOR NOT A PARTY.—In replevin by an heir against an owner of the materials in a tramroad removed from land of the intestate, the question whether the administrator of intestate waived the right of the estate to insist that the materials in the tramroad had been forfeited by failure to remove the same within the time stipulated in a deed, so that the estate could not claim such materials as an asset of the estate, would not be determined, where the administrator was not a party.

9. JUDGMENT—PARTITION OF LAND OF DECEDENT HELD NOT TO DIVEST ESTATE OF RIGHT TO PERSONALTY ON THE LAND, WHERE ADMINISTRATOR WAS NOT PARTY.—Where a tramroad was constructed on land under an agreement by which it did not become a fixture if the materials in such road were forfeited to the estate of the landowner by failure to remove the same within the time stipulated, such materials passed to the administrator of the landowner, and his rights were not affected by a partition of the real estate in a suit to which he was not a party.

10. FIXTURES—FORFEITURE OF RIGHT TO REMOVE FROM LAND HELD TO REQUIRE AFFIRMATIVE ACTION.—If a right to remove a tramroad constructed on land under an agreement that it might be removed within a specified time was forfeited by failure to make such removal within the time agreed, such forfeiture was not automatic, but the right to the forfeiture must have been claimed and asserted by the person entitled thereto.

Before McIVER, J.  Dillon, July Term, 1920.  Reversed and remanded.

Action by S. D. Lane against Bell Lumber Co. From judgment for plaintiff the defendant appeals. ·

*Messrs. L. D. Lide* and *H. S. McCandlish* and *W. C. Moore,* for appellants, cite: *Case controlled by* 114 S. C., 41. *Law as to fixtures:* 31 S. C., 276. *Possession is constructive notice to purchaser of a holding under an equitable right of title:* 22 S. C., 32. *Before a purchaser can claim title superior to that his grantor could in good faith give, he must show affirmatively that he had no notice and paid actual value:* 57 S. C., 1; 59 S. C., 137. *Recital of consideration is not proof of actual payment of values:* 39 Cyc., 1786. *Personal property does not pass unless it has become a part of freehold:* 14 S. C., 362. *Notice at Sheriff's sale cannot affect rights of parties:* 84 S. E., 233. *Visible easements:* 72 S. C., 228; 79 S. C., 281.

*Messrs. Joe P. Lane* and *Gibson & Muller,* for respondent, cite: *Case controlled by* 114 S. C., 41. *Right of forfeiture of rail passed with deed:* 24 Cyc., 1046; 32 Cyc., 655, 658, 659; 14 Cyc., 897; 21 Cyc., 434; 3 Cyc., 565; 13 Cyc., 681. *Waiver by Finkleas was personal matter:* 40 Cyc., 252, 258, 259, 261. *Appellant must show irrelevant charge was prejudicial:* 71 S. C., 444; 73 S. C., 557.

November 14, 1922.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action in claim and delivery of personal property, instituted in the Court of Common Pleas for Dillon County, September 16, 1919. The case was tried before Circuit Judge McIver and a jury, July term, 1920, and resulted in a verdict for the plaintiff. The defendant has appealed.

The personal property in controversy consists of a lot of iron rails and attachments which had been removed, a few days prior to the suit, by the defendant, from a tract of land owned by the plaintiff. They had been placed on

the land many years before the plaintiff acquired it, by Carskaddon & Co., sawmill men, in the construction of a tramroad. The entire length of the tramroad was about eight miles; it extended beyond the tract owned by the plaintiff, upon which there was only one mile of the tramroad. The rails and attachments removed by the defendant from this mile of the road are the subject-matter of dispute in this action.

The respective claims of the parties will appear from the following statement of facts:

The tract of land in question formerly belonged to one Nancy Carmicheal. In October, 1906, an action was instituted by the individual members of the firm of Carskaddon & Co. against Nancy Carmicheal, the exact nature of which does not clearly appear, nor is it important here; the action resulted in a decree of the Court which directed J. D. McLucas, Master, to convey the timber rights upon the tract to Carskaddon & Co. upon certain terms and conditions; accordingly the Master, on November 14, 1906, executed and delivered to Carskaddon & Co. a deed conveying to them all of the interest of Nancy Carmicheal in the timber upon said tract and several other tracts, with the right to construct such buildings, railroads, tramroads, and structures as might be required, allowing them ten years from the date of the deed within which to remove the timber, and providing that they should have the right, at any time prior to or within ninety days after the termination of contract, "to remove any and all structures and property" which may have been placed upon the premises by them. This deed was duly recorded.

Carskaddon & Co. then began operations, and constructed the tramroad as above described. In a few years they cut all the timber upon this particular tract, but maintained the tramroad in its entire length of eight miles, including the one mile upon this tract for the purpose of transporting the

timber cut upon the other tracts which were reached by the tramroad.

In 1913 Carskaddon & Co. became financially involved, and were adjudged bankrupts. At the bankrupt sale one W. F. Stackhouse became the purchaser of their entire assets, including the tramroad in its entire length.

In 1915 Nancy Carmicheal died, leaving a number of heirs at law, among whom were H. C. Finklea, A. M. Finklea, and J. W. Finklea. H. C. Finklea was appointed and duly qualified as administrator of her estate.

The ten-year time allowed by the Master's deed to Carskaddon & Co. for cutting and removing the timber was due to expire on November 14, 1916, and the ninety-day period within which they were licensed to enter and remove "any and all structures and property" on February 14, 1917.

The defendant offered testimony tending to show that prior to the expiration of the ten-year term Stackhouse, the purchaser of the interests of Carskaddon & Co. at the bankrupt sale, made an agreement with H. C. Finklea, the administrator of the estate of Nancy Carmicheal, that the tramroad should be allowed to remain where it was, and that he would pay rent for the occupation after the expiration of said period; also that the same agreement was made with A. M. Finklea and J. W. Finklea after they had acquired title to the tract at Master's sale, as will be shown.

In January, 1916, the heirs at law of Nancy Carmicheal instituted a partition proceeding which involved her real estate. That proceeding resulted in a decree and order of sale dated December 11, 1916. The sale took place on February 5, 1917, and A. M. Finklea and J. W. Finklea became the purchaser of the tract in question. On February 20, 1917, they complied with the terms of sale, and received from the Master a deed for the land; no mention of the tramroad property being made in the deed.

In the early part of 1919, the exact date not appearing in the record, Stackhouse sold the rails and attachments, which

had in the meantime remained unused upon the land for several years, to the defendant Bell Lumber Company.

On March 1, 1919, A. M. Finklea and J. W. Finklea conveyed the tract to the plaintiff, S. D. Lane, by a deed in the usual form, without reference to the tramroad property. There was testimony to the effect that one or the other of these grantors, in the negotiations with Lane for the sale, declared that they had no claim to the rails and attachments. This was denied by Lane, who testified that, on the contrary, he calculated upon the value of that property in making his trade, and expected them to go with the land.

In September, 1919, the defendant removed all of the property from the land, and piled it up for shipment at a railroad station. That precipitated this claim and delivery proceeding by Lane.

It thus appears that the plaintiff, Lane, claims the property under his deed from the Finkleas, and the defendant Bell Lumber Company, under their purchase from Stackhouse. The vital question is, which has the better title?

We are relieved from any embarrassment which 1, 2 might arise in the character of that property (whether fixtures or personal property) by the decision heretofore rendered in the case of *Stackhouse v. Carmicheal,* 114 S. C., 41; 102 S. E., 783; which involved another portion of the identical eight miles of tramroad, and where it is held: "The railroad in question was not a fixture, but personal property." The controlling effect of that case upon the question is conceded by the respondent, if it is not concluded by the form of the proceeding and the allegations of the complaint. Its character as personal property, not a fixture, is also concluded by the terms of the deed of the Master to Carskaddon & Co., which confers upon the grantees the right to remove it within a certain period.

"Where an article belonging to one person is annexed to the freehold of another person, the question whether it

shall be regarded as a fixture or not may, as between the parties, be controlled by agreement." 11 R. C. L., 1064.

Both by the circumstances of the annexation, by the agreement embodied in the McLucas deed, and by the admissions of counsel in the pleadings and argument of this case, the property was never a fixture, but originally was placed on the land as personal property, and could only be transmuted into a fixture, so as to make it a part of the realty, by an express agreement to that effect between the landowner and the owner of the rails, of which there is not a particle of evidence.

It cannot be successfully contended that that which was originally personal property has been converted into a fixture by the license contained in the McLucas deed, permitting the grantees Carskaddon & Co., within a certain limited time, to remove all structures placed upon the land by them; or that it was the intention of the parties that, if this license be not exercised within the limited period, the property should then become a fixture. There is nothing in the deed which lends color to either suggestion; the permission granted, recognizing the title of Carskaddon & Co., to the rails, as personal property, was nothing more than a license to enter upon the land and remove their property, without being chargeable as trespassers. It does not purport to provide for a forfeiture of the property to Nancy Carmicheal; it affected only the right of entry; there is not a suggestion that either the status or title of the property was to be affected by it.

The distinction is clearly drawn by the authorities between cases where the title to property annexed to the soil is in the owner of the land—that is, where it has become a fixture—and where the title is in the occupant, in respect to the right of removal.

"With regard to the other fixtures *as to which the title is in the owner of the realty,* with a right in the tenant to sever, or a title in the lessee to vest in the landlord if not

severed, there are numerous decisions and dicta that the fixture must be removed before the expiration of the term." 19 Cyc. 1067.

"With regard to fixtures *the title to which is absolute in him,* whether by agreement with others which is effective against the landlord, or whether by the landlord's agreement, it would seem that he has a like right, and that, so long as he has the title to the fixtures, he has the right to reposses himself of them until barred by the statue of limitations." 19 Cyc. 1067.

"Where one other than a tenant has annexed fixtures under such circumstances *that the title remains in him,* he seems generally to have the same time for removal that any owner of property left on the premises of another under like circumstances would have." 19 Cyc., 1071.

The title to the rails was in Carskaddon & Co.; they were personal property when they were placed on the land; they were personal property certainly until the expiration of the 10 years and 90 days; there is nothing in the deed which changes either that status or the title after the expiration of the period; and it follows that they are still personal property.

The title being in Carskaddon & Co., transmitted by the sale in bankruptcy to Stackhouse, and by his sale to Bell Lumber Company, the last named had the title and right to possession, deprived only, by the efflux of the period, of the license to enter and remove the property.

The well-considered case of *Saye v. Hill* 100 S. C., 21, 84 S. E., 307, is conclusive of the issue in this case. There one Rainey owned a lot; he conveyed it to a railroad company for a depot site; it was not so used, but was claimed by the company. Hill, with the knowledge and consent of Rainey and by license of the company, erected a cotton gin, grist mill, and planing mill on the lot. Rainey later brought suit against the company and Hill to recover possession of the lot. It was adjudged that Rainey recover possession of

the lot, and that Hill have until a certain time to remove his buildings, and that on that date he should vacate and surrender possession to Rainey. He failed to remove his buildings and machinery by the time stipulated. Later Rainey conveyed the lot to his daughters. Thereafter, and after Hill had been notified not to trespass upon the lot, he went upon it and removed certain of the property which he had placed there. The daughters then sued Hill for the trespass upon the lot and for conversion of the fixtures which he had removed. The Court held:

That under the former case of *Rainey v. Hill* it had been adjudicated that the buildings and machinery were not fixtures; that "nothing occurred thereafter to change the status of this property except the failure of Hill to remove it within the time specified in the decree. *But that did not forfeit his property therein.* It is conceded, however, that it did have the effect of *making him a trespasser,* when he went upon the lot to remove it after the expiration of the time allowed in the decree."

So in the case at bar, there was nothing, either in the deed or in subsequent events, to change the status of the rails, except the failure of the Carskaddon & Co., Stackhouse and Bell Lumber Company to remove them within the time limited by the McLucas deed. *But that did not forfeit their property therein.* It is conceded, however, that it did have the effect of making Bell Lumber Company a trespasser when they went upon the premises to remove them after the expiration of the time allowed in the deed.

The plaintiff's claim is based upon the following 4, 5 grounds: That the rails went with the land under his deed from the Finkleas; that he was a bona fide purchaser for value without notice of any claim which Carskaddon & Co., Stackhouse or Bell Lumber Company had to the rails. He does not claim to have purchased the rails by any contract referring specifically to them, but

that they were transferred by the deed which covered the land, which as a fact makes no mention of the rails.

It is impossible for the rails to have gone with the Finklea deed unless they were fixtures, or were specifically mentioned in the deed. They have been held and admitted throughout that they were personal property and never fixtures, and being personal property not included in the deed, parol evidence was inadmissible to prove that they were so included. *Blackwell v. Faucett* (S. C.), 108; S. E., 295; *Martin v. La Boon,* 116 S. C., 101; 107 S. E., 320.

If the rails did not go with the deed, the plaintiff's claim as a bona fide purchaser of course fails. But independently of this, he had notice by the recorded deed of McLucas to Carskaddon & Co. that the rails were personal property belonging to Carskaddon & Co.; and he also had notice by the presence of the railroad itself, not at all appurtenant to a plantation, that some one may have an interest therein, sufficient to put him on inquiry. *Harman v. Railroad Co.,* 72 S. C., 228; 51 South., 689; *Railway Co. v. Howell,* 79 S. C., 281; 60 S. E., 677. This inquiry would have disclosed the exact situation.

But if, as held, in the case of *Stackhouse v. Carmicheal,* 114 S. C., 41; 102 S. E., 783, the failure to exercise the license to remove the rails within the specified time constituted a forfeiture of the rails, the rails being personal property, such forfeiture inured to the benefit of the administrator of the estate of Nancy Carmicheal, and not to her heirs, from whom the plaintiff claims.

Nancy Carmicheal, for all intents and purposes the grantor in the McLucas Master's deed, died before the expiration of the license to remove the property. If she had survived that period, and the grantee had failed to exercise the license, under the ruling of the Stackhouse case, which is disapproved, she could have claimed title to the personal property left on the premises by reason of the forfeiture

of the right of the grantee to remove it. At the time of her death it was an inchoate right to claim the title to personal property upon the breach of a condition subsequent, and that inchoate right devolved upon her administrator, not upon her heirs. The administrator could have taken possession of such personal property and administered upon it as the personal assets of the deceased. It never was a fixture, attached to the freehold, and never became real estate. The fact that the property was upon the land and the title to it transferred by the forfeiture from the grantee to the grantor could not transmute that which was personal property into real estate; the forfeiture acted upon the *title*, not upon the *nature* of the property.

There is no testimony to the effect that Nancy Carmicheal, who, as has been noted, died before the expiration of the license, waived her right of forfeiture, but there is testimony tending to show that prior to the expiration of the license Stackhouse and her administrator entered into an agreement by which Stackhouse's title and right to remove the tramroad was recognized and extended.

In the view we take of the case it is a matter of 8, 9 absolutely no concern to the plaintiff whether the administrator would legally waive the right of the estate to insist upon the forfeiture or not, and it would be improper to decide that question in this case as to which the administrator is not a party. If, as we have endeavored to show, the right to claim the title to this personal property by the forfeiture of the grantee's license to remove it within the fixed period of time inured to the benefit of Nancy Carmicheal's estate, and devolved upon her administrator, the title vested in the administrator; if that right was legally waived by the administrator, the title remained in the grantee was purchased by Stackhouse, and transmuted by him to Bell Lumber Company. If it vested in the administrator it certainly was not divested by the partition of the real estate of the intestate in a proceeding by which the

administrator as such was not a party; it therefore did not pass by the Master's deed to the Finkleas, nor by their deeds to the plaintiff. If it remained in Carskaddon & Co., or Stackhouse, the purchaser of their assets, it was transmuted to Bell Lumber Company. In neither event could the title reach the plaintiff. He is entitled only to the property conveyed to him by the Finklea deed, which makes no mention of the rails, which were personal property. He certainly can claim no more than the Finkleas owned, and there is no pretense of a claim even by them to the rails. On the contrary, there is testimony tending to show that they disclaimed title thereto and an agreement recognizing the title of Stackhouse.

The only possible way for the plaintiff to connect up with the title to this personal property is through the deed from the Master to Finkleas, upon the assumption that it conveyed the title thereto along with the land which was sold for partition. There are three reasons why this effort must fail: (1) The deed makes no mention of the property; (2) a forfeiture is not automatic; some one, the grantor or other interested, must claim and exercise, of which there is not a particle of evidence; (3) the title, even if consummated automatically, vested in the administrator of Nancy Carmicheal. In either view of the case, therefore, whether the rails were forfeited by the failure to remove them, or remained the property of Carskaddon & Co. and their successors in title, the plaintiff has failed to show any right whatever to recover them. The Circuit Judge should have directed a verdict in favor of the defendant.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court, with instructions to direct a verdict in favor of the defendant, under rule 27 (90 S. E., xii).

MR. CHIEF JUSTICE GARY and MR. JUSTICE MARION concur.

MR. JUSTICE WATTS, dissenting: I do not concur in the opinion of Mr. Justice Cothran. I approve of the case of *Stackhouse v. Carmicheal,* 114 S. C., 41; 102 S. E., 783, and the principles therein announced. It was part of the same railroad and rails, and the Circuit Judge had every reason to assume that this Court would adhere to its decision, at least until the suits involving the same rails between different parties were determined. Mr. Justice Cothran throughout his opinion disapproves this decision, and if his opinion prevails will overrule it. In the case of *Stackhouse v. Carmicheal* this Court held:

"The grantees under the lease had the right to remove before the expiration of the lease, within the ten years, or within ninety days after its expiration. This was the contract made between them and by this they are bound. A failure to remove within the time contracted for by the parties worked a forfeiture. Both parties are bound by the provisions of the contract made between the grantor and grantees, so under the Carskaddon Young Company deed the rails on this land become the property of the grantor when there was a failure to remove within the time provided for in said deed."

Under the decision, while the rails were held to be personal property, it was governed by the timber deed, and at the expiration of the time limit for removing the structures and property placed on the land by the grantees, or their privies, the rails became forfeited to the owner of the land. The plaintiff subsequently acquired this land, and the right of forfeiture could not have remained in the grantors after they sold the land. The original agreement relied on is spoken of as rent. If it was made as such it could not be for more than one year, unless reduced to writing and recorded. It is an attempt to extend the original timber deed, and could not be made by parol for more than one year.

There were no reservations made in the deed of the Finkleas to Lane. Lane says he had no actual notice, and

he could not have had constructive notice, as it is conceded no contract was in writing and recorded. Lane was a third party and could not be affected by an agreement between Finklea and appellant, unless he had actual or constructive notice there was a conflict of testimony between the parties in this issue, and his Honor properly submitted it to the jury.

The question of waiver was also submitted. Lane was not bound by any agreement of Finklea, unless he had notice of it and acquired or in some manner ratified the same. I see no error on the part of his Honor. He followed the law as laid down by this Court in a suit involving a part of the same railroad tract, and to reverse him and overrule that case would subject the Court to a criticism of being capricious. It is true Mr. Justice Cothran was not on the bench when that decision was made, but I was, and think the decision sound, and cannot consent to overruling it. I see no error on the part of his Honor, and think all exceptions should be overruled, and judgment affirmed.

MR. JUSTICE FRASER: I concur in the result with Mr. Justice Watts. I think the case of *Stackhouse v. Carmicheal,* 114 S. C., 41; 102 S. E., 783, governs this case. I differed with the majority of the Court in that case, but I am as much bound by the majority opinion as if I had concurred fully. The difference between *stare decisis* and *res adjudicata* in these two cases is technical only.