8525

JONES v. KELLY.

1. RE-FORMATION OF DEEDS.—In an action to re-form a deed conveying a life estate to one possessing a fee simple, the plaintiff must show a contract between the original parties to the deed to convey a fee simple. A full and fair price has never been held to be conclusive of an intention to convey the fee. Can laches apply in such a case? MR. JUSTICE WOODS thinks under the evidence the deed should be re-formed.

2. EVIDENCE—TRANSACTIONS WITH DECEDENTS.—A grantee, who has conveyed the land by warranty deed, cannot be made a competent witness as to a sale of the land to him by his deceased grantor by release from his warranty pending the suit in an action by a subsequent grantee against the heirs at law of grantor to re-form the deed.

Before PRINCE, J., Florence, January, 1912. Affirmed.

Action by Ella T. Jones against Chas. M. Kelly et al. Plaintiff appeals.

Messrs. Willcox & Willcox and LeRoy Lee, for appellant, cite: The evidence of Moody: 32 S. C. 362; 20 S. C. 572; 34 S. C. 246. A witness disqualified by interest may be restored by release of interest: Rice 442; 1 Rich. L. 242; 1 Bail. L. 364; 2 N. & McC. 308; 2 Rich. Eq. 33; Jones on Ev. 978; 2 Elliott, secs. 741, 742, 743; 7 Jones 441; 30 Ency. 1007-8; 111 N. Y. 239. Contract to convey fee simple is shown: 85 S. C. 472; 13 Fed. 260; 38 S. C. 417; 104 N. C. 148; 55 Am. Dec. 137; 56 N. E. 1075. Laches should not be applied here: 34 Cyc. 964; 16 Cyc. 724, 730; 43 S. C. 441; 56 S. W. 377.

Mr. Walter Hazard and W. L. Bass, contra. Mr. Hazard cites: Incompetency of Moody's testimony and effect of release: Code 1912, 438; 11 S. C. 122, 128; 18 S. C. 329; 6 S. C. 76; 20 S. C. 567; 22 S. C. 525; 32 S. C. 246; Jones on Ev., sec. 794: Interest previously owned by him would be affected: 32 S. C. 359; 89 S. C. 347; 46 S. C. 133; 57 S. C. 460. Understanding of one party is not admissible: 34 Cyc.

980-1, 987-8; Jones, sec. 137; 2 Wig. Ev., sec. 658. *Findings below will be sustained unless against the manifest weight of the evidence:* 11 S. C. 29, 93, 547; 12 S. C. 608; 8 S. C. 347; 64 S. C. 27. *Principles governing in re-formation of deeds:* 44 S. C. 34; 38 S. C. 417; 34 Cyc. 984, 989, 990; 7 Marsh 432; 2 Md. Ch. 151; 6 Har. & J. 435, 774; 2 Pom. Eq. Jur., sec. 859; 4 Rich. Eq. 307; 2 McCh. 142. *Claim is barred by laches:* 89 S. C. 574; Bail. Eq. 216; 51 S. W. 455; 27 Cyc. 1201; 20 S. E. 831; 17 Wall. 1; 14 Ky. L. 107; 114 S. W. 484; 14 App. D. C. 54; 8 Md. App. 43; 35 Mich. 166; 5 S. E. 701; 46 S. E. 309; 68 S. E. 482; 101 Am. St. R. 38; 16 Cyc. 172, 150; 108 Am. St. R. 301; 4 Pom. Eq. & Eq. Rem., secs. 20, 22; 5 Id., secs. 28, 27; 4 Rich. Eq. 356; 67 S. C. 75, 83; 43 S. C. 436; 2 McCh. 112; 4 Rich. Eq. 307; 120 Am. St. R. 291; 12 Am. Dec. 367; 42 Am. Dec. 753. *Plaintiff is barred by laches of her privies in estate:* 16 Cyc. 150, 152, 173, 172; 127 U. S. 489; 8 How. 210; 42 Am. Dec. 753; 12 Am. Dec. 367, 371.

April 22, 1913    The opinion of the Court was delivered by

MR. JUSTICE FRASER.    This was an action to re-form a deed.    The complaint alleges, that heretofore, to wit, on or about the 5th day of October, 1868, one Charles McAllister, being then the owner thereof, executed and delivered to E. T. Moody his certain deed whereby he conveyed, in consideration of the sum of five hundred dollars, a certain tract of land in Williamsburg county containing fifteen acres (describing the land).    That at the time of the conveyance above mentioned, the sum of five hundred dollars was the full and fair value of the absolute title of said Chas. McAllister without any limitation or reservations.    That, as plaintiff is informed and believes, the said Chas. McAllister and the said E. T. Moody both, at the time, understood that said E. T. Moody was receiving a conveyance, in fee simple, without reservation or limitation and the said E. T. Moody paid the consideration mentioned in the deed with this under-

standing; but that, on account of an error in the preparation of the deed of conveyance (which was prepared by a party not skilled in such matters) and such deed was so formed as to convey, as plaintiff is informed and believes, a life estate only to the said E. T. Moody. That thereafter, by a succession of conveyances, the land was conveyed to the plaintiff. That Charles McAllister died in 1876; that the defendants are his heirs at law and the heirs of the heirs who are now dead. The complaint prays for a re-formation of said deed and that she be declared the owner of said land.

Some of the defendants answered denying the allegations as to a mistake in the deed and set up laches, etc. It was referred to a referee to take the testimony. The trial was had before his Honor, Judge Prince, who, in a very strong and elaborate decree, found as follows:

"Without prolonging the discussion to greater length, it is sufficient to say that a careful consideration of all the facts established by the testimony fails to satisfy me that there was a contract between McAllister and Moody whereby the former agreed to convey to the latter a fee simple estate in the property in question, and that through mistake the deed which was executed by McAllister failed to express that contract."

E. P. Moody was offered as a witness. Moody had warranted the title, but during the taking of the testimony, after he had testified, he was given a release under his warranty and he went back on the stand and reaffirmed his statements. His Honor ruled out the testimony of Moody and held that the plaintiff was guilty of laches and that the claim was stale. In the view that this Court takes of this case it will only be necessary to consider the ninth exception and we will consider that exception as raising the initial question in this case and in its consideration will consider the testimony of Moody.

Has the plaintiff shown that the deed from McAllister to Moody does not contain the contract between the parties?

There must be a meeting of two minds in order to make a contract. The complaint recognizes this and alleges that both Charles McAllister and Moody understood that E. T. Moody was receiving a conveyance in fee simple.

Moody testified that he married a granddaughter of Charles McAllister. That he rented the land in dispute from him at six dollars per month. That W. G. McAllister, a son of Charles and the uncle of Moody's wife, suggested to him that he buy the place and that he talk to Charles about it. That he (Moody) went to see him (Charles) and the old man talked favorably about the sale. That some time afterwards he saw W. G. McAllister again and told him that the old gentleman had talked favorably about it. That W. G. McAllister told him that he (W. G.) would see his father and try to get the deed for him (Moody). That six months afterwards he was given the deed by W. G. McAllister and executed the notes for the purchase money. W. G. McAllister is also dead. All that is known of Charles McAllister afterwards is that he collected some of the notes and lived in that community until 1876. *There is no word of direct evidence to show what Charles McAllister intended by the conveyance.* It is said, however, that Charles McAllister lived close by and could have seen Moody cut down the timber and there is no evidence of his objection. That is true, but Moody testified that the timber was "very poor. It had been culled over and it had pretty well all been burnt over."

It is said that the deed was drawn by W. G. McAllister and he was not skilled in such matters. That is true, but in 1872 Moody sold the land to M. L. Jones. This deed is also said to have been written by W. G. McAllister and conveys a fee and a warranty that is significant. Judge Prince thinks that that warranty indicates a doubt as to the sufficiency of the title. In this we can not say he was in error. W. G. McAllister used the word "heirs" in 1872 and used it in an inartificial conveyance. Charles McAllister was then

alive and in that community. If the deed did not convey what he intended to convey and what Moody intended to purchase, that was the time to correct the mistake. But it is said Moody paid full price for a fee and that entitles him to a conveyance in fee. Full price standing alone has never been held to be conclusive that it was the intention to convey a fee. If a full price is sufficient of itself to carry a fee after the death of the grantor, then a small price after the death of the grantee ought to cut down a fee to a life estate or a term of years. That would be a very dangerous doctrine in this State, where land values are rapidly increasing. That is not the law and we have not been referred to any case that so holds. The witnesses are not agreed as to whether it was full price or no. Moody paid five hundred dollars for land with a dwelling house on it which rented for more than seven per cent. on one thousand dollars.

It is said Charles McAllister did not make any objection to the sale to M. L. Jones. There is no evidence of any objection, but he had no right to object as long as Moody lived. Moody lived until this case was nearly ready for a hearing before Judge Prince and testified in the case. This Court can not find any evidence to contradict the plain import of the deed. There is no evidence that Charles McAllister contracted to convey a fee, and none that even Mr. Moody stipulated for a fee. There was conflicting evidence as to what Mr. Moody thought he was getting. It will be observed that the plaintiff claims that the deed does not convey a fee simple, but a life estate and in the failure to convey a fee it failed to express the contract between the parties. The action is to re-form the deed. The plaintiff proved that there was no contract except the deed and thereby failed utterly to prove the essential fact necessary to re-form the deed.

This Court holds that the appellant has failed to prove the contract set up in the complaint. The testimony, though formally ruled out by Judge Prince, has been considered by

23—94

this Court, as it is all in the record. It would not have affected the result, and the error, if any, is immaterial. It was not error. The statute of this State excludes the testimony where it "can in any manner affect the interest of such witness or the *interest previously owned or represented by him.*"

What a travesty it would be to put a witness on the stand and allow him to state things that will relieve him from liability, then release him from liability and put him back on the stand and ask him if the things to which he has just sworn are true or false. Our statute prevents just that thing. There was no error in ruling out the testimony of E. T. Moody.

As this Court has held that the appellant has failed to establish the contract, the other questions do not arise.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MR. JUSTICE WOODS, *dissenting.* The plaintiff, Ella F. Jones, being the holder of the deed to a tract of land hereinafter described, brought this action against all the heirs of Charles McAllister for the re-formation of the title whereby Charles McAllister conveyed the land to E. T. Moody under whom the plaintiff claims. The complaint alleges that on or about the 5th day of October, 1868, Charles McAllister executed and delivered his certain deed to E. T. Moody, intending to convey the fee simple title to fifteen acres of land in the incorporate limits of the town of Lake City, county of Williamsburg, for the named consideration of $500.00; but by a mistake, caused by the deed having been drawn by an unskilled person, the necessary words of inheritance were omitted from the deed. The land was conveyed by E. T. Moody to M. L. Jones, January 28, 1872; by M. L. Jones to Pittman Bros.; by Pittman Bros. to B. Wallace Jones, December 17, 1885; by B. Wallace Jones to Pittman Bros., April 17, 1895; by Pittman Bros. to Ella F. Jones, the plaintiff in this action, May 1, 1900. All the

deeds made to the land since the transfer from Charles McAllister to E. T. Moody have been fee simple titles. The deed which the plaintiff seeks to have re-formed is as follows:

"State of South Carolina, Williamsburg county.

"Know all men by these presents, that I, Charles McAllister, of the county and State aforesaid, for and in consideration of the sum of five hundred dollars to me paid by E. T. Moody, of Williamsburg county and State aforesaid, have granted, bargained, sold and released, unto the said E. T. Moody, one lot or tract of land, containing fifteen acres, more or less, being a part of a tract of land, containing fifteen hundred acres, surveyed for Charles McAllister and to him granted the 14th of March, 1790, situated in Williamsburg county and State aforesaid, on the southwest side of Lynches' Lake, bounded N. E. by lands of Ann Jones, on the Georgetown road, south by Charles McAllister and Mrs. Mary Murphy's land and continuing straight line to W. G. McAllister's line, west by W. G. McAllister's line, north by Aider and Charley Kelley's line to the Georgetown road, and has such shapes, forms and boundings as a plat doth represent.

"Together with all the rights, titles, members and appurtenances incident or appertaining.

"Him to have and to hold from this day forward the above named land against myself, and I, Charles McAllister, of the aforesaid county and State, do further bind myself to warrant and defend against my heirs, executors and administrators, and all other persons lawfully claiming the same or any part thereof.

"In witness whereof, I do hereunto set my hand and seal this 5th day of October, in the year of our Lord one thousand eight hundred and sixty-eight, and do sign, seal and deliver in the presence of these witnesses.

CHARLES McALLISTER (L. S.)"

S. D. McCutchen, R. D. Isgott.

The defendants in their answer, deny that the omission of the words of inheritance from the deed was due to mistake, and set up as a further defense "that a period of more than forty (40) years has elapsed since the date of the execution and delivery of the said deed from Charles McAllister to E. P. Moody and since the date of its record in the office required by law; and the defendants, therefore, submit and allege that the original grantee and all his successors in interest and privies in estate, including the plaintiff in this action, have been and are now estopped by the lapse of time and the staleness of the claim, involving the loss of evidence by the death of Charles McAllister and others, which would make it impossible to ascertain the true facts, and it would, therefore, be inequitable to grant the relief prayed for in the complaint."

The case, being at issue, was referred by consent to Charles W. Stoll, Esq., as special referee, to take and report the testimony. The report was made and the case heard before Judge George E. Prince at the November term of the Court of Common Pleas for Florence county, that portion of Williamsburg county where the land is situated being now in Florence county. Judge Prince dismissed the complaint, holding in an elaborate decree (1) that the plaintiff had failed to show that the deed was not intended to convey a life estate to Moody but a fee simple, and (2) that the plaintiff's claim was barred by her laches in presenting it to the Court.

In considering these conclusions of the Circuit Court, it is of prime importance to bear in mind that the plaintiff is not asserting a claim for re-formation of the deed against *bona fide* purchasers from the grantor, Charles McAllister, but against his heirs at law, who can have no higher right than their ancestor would have if he were living. It is true, however, that even as to the parties to a deed the evidence of mistake in its terms must be clear and convincing to warrant a re-formation.

I agree that the Circuit Judge correctly held that the testimony of the grantee, Moody, to the effect that the intention was to convey a fee was incompetent because such testimony as to the transactions or communications between Moody and McAllister, his deceased grantor, would affect the interest previously owned by the witness. But leaving out of view all other testimony, it seems to me that the deed furnishes on its face evidence clear and convincing that the intention was to convey a fee simple and not a life estate. It was manifestly drawn by one not familiar with technical forms in conveyances, for only a part of the usual *tenendum* clause is found and the *habendum* and warranty are mingled in the same paragraph. The evidence leaves no doubt that the draftsman was W. D. McAllister, a son of the grantor, a plain countryman without professional training in conveyancing.

In construing deeds as in the performance of all other judicial functions, the Court must take judicial notice of the manners and customs of the people whose writings they try to understand; and clear conviction arising from taking into account such manners and customs surely is as good as any other conviction. Having in view the manners of the plain people of the country, it is inconceivable that any man without legal training would write such a deed as is now before us when his intention was to convey a life estate. Indeed, it seems safe to say that if two deeds were presented to such a man, one to A and the other to A and his heirs, with the statement that one conveyed a life estate and the other a fee simple, he would say that the deed to A was absolute and the deed to A and his heirs conveyed for A's life only and after his death to his heirs. So universal is the custom to use the words "for life" or similar words when the intention is to convey a life estate and not a fee, that I venture to think that there will be no dissent from the statement that the attempt to limit to a life estate is never

attempted without the use of such words either by lawyers
or laymen, unless the purpose be to entrap or deceive. In
view of these facts, can there be a doubt that courts of
equity should relieve against the injustice which arises from
the absurd rule of common law that the use of the word
"heirs" is necessary to create a fee whenever they can possi-
bly do so without interfering with the rights of innocent
purchasers or creditors? But in this case, not only is the
intention to convey absolutely and not to limit to a life estate
shown by the absence of any express limitation, but the
language of the deed affirmatively shows that intention.
The words "together with all the rights, titles," etc., indi-
cated, if they meant anything, to a man untutored in the law
that all the grantors' rights and titles in the land were con-
veyed without reservation. The words "him to have and
to hold from *this day forward*," etc., meant from this day
forward indefinitely, that is without limit. They are equiva-
lent to the words "to have forever." In *Johnson* v. *Gilbert*,
13 Rich. Eq. 42, there were no words of inheritance in the
deed, yet the Court held that the clause, "I, said Jesse Gil-
bert, Senior, warrants and defends unto Jesse Gilbert,
Junior, forever against myself, my heirs and assigns for-
ever," etc., were in themselves "satisfactory evidence at the
least of an executory contract for the sale of the land in
fee," and that the heirs of the grantor had no interest in the
property conveyed. Looking to the deed alone, it seems
to me that this case is conclusive authority for holding that
the intention in the present case was to convey a fee simple.
The case of *Austin* v. *Hunter*, 85 S. C. 472, 62 S. E. 734,
was decided on the same principle. In *Sullivan* v. *Moore*,
92 S. C. 305, the Court said: "The deed of conveyance
was written by Jared B. Sullivan, plaintiff's husband.
Unless the Courts must look away from the obvious, they
known that it is probable almost to the point of certainty that
in writing a deed no layman would express the conveyance

of a life estate by the mere omission of the word 'heirs' in the premises and the *habendum* clause when using it in the warranty, and that no lawyer would do so except one wholly possessed with the spirit of priggishness." In *Trustees* v. *Bryson,* 34 S. C. 401, 13 S. E. 609, and *Sullivan* v. *Latimer,* 38 S. C. 417, 17 S. E. 221, it was held that a paper in form a deed and purporting on its face to be under seal furnished conclusive evidence that the parties intended to seal it, and that in equity it would be regarded a good conveyance. The ruling was based on the Court's knowledge that reasonable men would not make such a paper without intending to seal. It seems to me that the Court must know with equal certainty that the people of this country do not make papers of this sort when they intend to convey a life estate, but only when they intend to convey a fee simple, and that the rule of the common law that the use of the word "heirs" is necessary to convey a fee is in modern life a fiction as absurd as would be its ancient contemporaneous fines and common recoveries.

With the intention to convey a fee made manifest beyond doubt from the terms of the deed itself, it is by no means necessary for the plaintiff to prove that she paid full value, for the evidence of value is important only as showing the improbability of the grantee paying the full value of the fee for a life estate. If that intention is evident from the deed or otherwise, the plaintiff will not be denied relief merely because the grantor chose to take a small price. When the evidence of value is considered in view of the well known depression in the price of land, and the backwardness of the country where it is situated in 1868, it seems to me, the clear preponderance favors the conclusion that $500.00 was a full price for the fee simple title. Certainly, it produces a clear conviction that $500.00 would have been a very excessive price for the life estate.

There are other circumstances showing that the parties thought that McAllister had parted with all interest in the

land. The renunciation of dower was in the regular form to Moody and his heirs. Moody cut and removed timber from the land and there was no evidence of objection. He conveyed by fee simple deed to M. L. Jones, and W. G. McAllister, the son and agent of Charles McAllister, wrote the deed, thus indicating his belief that Moody had the fee simple. There is not a particle of evidence that Charles McAllister or any of his heirs in all the long period since the deed was made to Moody, and in view of all the changes in ownership ever made or referred to any claim to a reversion.

The only other obstacle to the re-formation of the deed is the alleged laches of the plaintiff. The plaintiff acquired title to the land from Pittman Bros. through successive conveyances from Moody, on 1 May, 1900. There is no claim that she had actual knowledge of the defect in the title until 1909, when it was developed in an action for specific performance of an agreement for exchange of this land for another lot brought by the plaintiff against C. M. Kelley. The plaintiff and those under whom she claims have been in possession of the land since the conveyance from Charles McAllister to E. T. Moody. Each grantee in these successive conveyances acquired the rights of his grantor, including the right to have the title re-formed. There is no evidence that any of the parties, either plaintiff or defendants, knew of the defect, or that Charles McAllister or the defendants, his heirs, ever made any claim that they had any interest in the land, until the defect was discovered and introduced in the course of the litigation with Kelley. It is true that under the recording laws of the State, the plaintiff is chargeable with constructive notice of the defendant's claim as heirs at law of Charles McAllister, but it by no means follows that she or her grantors are chargeable in a court of equity with laches in not knowing of the defect in the deed and asking for its re-formation at an earlier date. "As a definition of laches, however, it is sufficiently correct

to say that it is the neglecting or omitting to do what in law should have been done, and this for an unreasonable and unexplained length of time, and in circumstances which afforded opportunity for diligence. * * * It is manifest, therefore, that the period of time which will be a bar in equity must needs vary with the varying circumstances in the different cases. Thus, to constitute laches in a case showing gross negligence, a lesser lapse of time would suffice than in a case of ordinary carelessness and inattention. So, too, would the length of time deemed sufficient be greater or less according as the evidence in the case might show whether the party to whom laches is imputed actually knew of the opportunity he neglected, or was simply presumed to have known." *Babb* v. *Sullivan,* 43 S. C. 436, 21 S. E. 277.

It would be a hard rule for courts of equity to deny to landholders relief against their grantors from technical defects in old deeds like this on which their titles depend, on the ground of laches, merely because technical defects, like this, which appear in the record have remained undiscovered for many years. In this case it seems to me peculiarly hard and inequitable. As I have endeavored to show, the defendants have nothing but a naked technical legal claim, based on a paper which shows on its face the claim to be grossly inequitable and its assertion most unjust

The plaintiff bought without knowledge of the defect, paying full value, and brought this action almost immediately after the discovery of the technical defect in the deed; and the issue is between the plaintiff and the heirs of the grantor who made the defective deed, no innocent purchasers being involved.

All the equities being, in my opinion, on the side of the plaintiff, and the defendants having nothing to support their unjust claim except a naked legal technicality, I think the judgment should be reversed and the deed re-formed according to the prayer of the complaint.