13549

GROCE v. BENSON *ET AL.*

(167 S. E., 151)

146

*Messrs. H. L. Bomar* and *H. K. Osborne,* for appellant,

*Messrs. J. W. Boyd, Nicholls, Wyche & Russell* and *Poag & Poag,* for respondents,

January 3, 1933.

The opinion of the Court was delivered by Mr. Justice Bonham.

One can only speculate as to the reason why Silas Benson procured a layman to prepare for him a deed to real estate rather than a man learned in the law. Whatever the reason may have been, it resulted, as so often is the case, in bringing confusion, trouble, and expense to those who came after him. He sowed seeds which, after sixty odd years, have blossomed into this litigation.

The action is one primarily to foreclose a mortgage given by Miss Florida Benson to the plaintiff, which covers certain lands originally owned by Silas Benson of Spartanburg County, and which he conveyed to his son, John M. Benson, and the children of John, Virginia Lee and Caroline Hampton, then *in esse*, "together with any other that may hereafter be lawfully born to him." The defendant Florida Benson is one of the after-born children.

The consideration of the deed is "One Dollar, the receipt whereof is hereby acknowledged, together with the love and affection which I bear to him, John M. Benson and his children." There are no words of limitation in the deed. The warranty clause warrants against "all other persons claiming the same, or any part thereof," followed by this: "And I do hereby settle and permanently fix the right, and title of said tract of land in and upon the said John M. Benson and his children as above named, and I do hereby bind myself, my heirs, executors, administrators and assigns to warrant and forever defend the said premises unto the said John M. Benson and children above named."

Certain judgment creditors of Miss Florida Benson were made parties to the suit for foreclosure, but they are not concerned in this appeal. Some question having arisen as to the interest which Miss Florida Benson had in the mortgaged lands, all those were made defendants who, on their own behalf, and on behalf of all other persons, known or unknown, might claim title to, or interest in, the lands involved in the suit, by inheritance, or otherwise, from Silas Benson, or through his devisees or any of them.

The complaint prays for judgment and foreclosure; that Florida Benson be adjudged to own in fee simple the property covered by the mortgage; or, if the Court should hold that the deed from Silas Benson to John M. Benson and his children did not convey the lands in fee, and should hold that the deed is not a covenant to stand seized to uses, that then the deed be reformed and words be inserted to convey the fee in accordance with the intention of the parties thereto.

The answers of these defendants who are interested in the question of the nature and quality of the fee which Florida Benson has in the mortgaged property deny that she is the owner in fee thereof; deny that the deed of Silas Benson to John M. Benson and his children conveyed the fee in this property; and deny all allegations and facts upon which are based the claim of right to have the deed reformed. They allege that Miss Florida Benson has only a life estate in these lands, and that plaintiff is entitled to foreclosure to that extent only.

The cause was referred to the Master for Spartanburg County, who filed an elaborate report which evinces much study and research, in which he holds that the deed from Silas Benson to John M. Benson and his children is a deed at common law, which for lack of words of inheritance carried only a life estate to the grantees; that the instrument lacks the attributes of a covenant to stand seized to uses. He held, however, that it was the intention of the parties to the deed that a fee should be conveyed, but that through mistake in drafting the deed the necessary words of inheritance were omitted, and he recommended that they be supplied by way of reformation of the deed. He also finds and reports what would be the interest of Florida Benson in the mortgaged lands if the deed be reformed to convey a the mortgaged lands if the deed be reformed to convey a fee, and what it will be if it be held that she has only a life estate.

Upon exceptions to this report by both parties, plaintiff and defendants, his Honor, Judge Sease, heard the case and filed a decree by which he sustained the conclusion of the

Master that the instrument is a common law deed, which does not contain words of limitation necessary to convey the fee; and does not possess the attributes of a covenant to stand seized to uses. He held, however, that: "The evidence does not sustain the recommendation of the Master on the issue of reformation. The deed does not bespeak an intention to convey a larger estate than is conveyed, and there is no evidence of mutual mistake whereby anything was omitted from the deed, or that there was any intention to make the deed other than as it was written."

He held that the mortgagor's title was a life estate, and ordered the mortgage foreclosed and the land sold.

The plaintiff appeals from this decree, and states the grounds of appeal in seven exceptions; but counsel for appellant state, in their brief, the questions made by the exceptions, and to be decided, under three heads: (1) Error to refuse to reform the deed on the ground of mistake, * * * and error to refuse to adjudge that the mortgage covered the fee; (2) incident to the question is the question whether the deed is a voluntary one which the Court is without power to reform; (3) if it is adjudged that his Honor was correct in holding that Miss Florida Benson's interest under the deed was a mere life estate, still he should have held that by inheritance and otherwise she had acquired an undivided interest in fee in each of the several tracts in question.

Appellant's counsel in their brief say: "We shall not contest on this appeal the contention that the deed, without reformation, does not contain words of inheritance essential to convey the fee, preferring to stake our case upon the above contentions."

That eliminates consideration of the question whether the deed is a common-law one, or whether it is a covenant to stand seized to uses, and leaves for our determination the questions whether the deed can be, and should be, reformed, and whether there was error in holding that Miss Florida Benson has only a life estate in the property covered by the mortgage.

Let us first dispose of the question whether is a voluntary deed and whether such a deed may be reformed by a Court of Equity.

It would seem that the issue is definitely settled in this State by the case of *Lawrence v. Clark,* 115 S. C., 67, 104 S. E., 330. There the deed which it was sought to reform was from a father to his son, and was upon the consideration of love and affection and $5 paid to the father ; it was held to be supported by a valuable consideration, and was subject to reformation. That opinion was rendered by a divided Court, and has been criticized in this and other jurisdictions, but it has never been overruled, and must be followed in applicable conditions.

We can see no sound reason for differentiation between a consideration of love and affection and $5, and one of love and affection and $1. Each of them is a nominal consideration, and it is a safe inference that the sums named were not actually paid despite the formal acknowledgment of receipt in each deed. We therefore, upon the authority of this case, hold that the deed from Silas Benson to John M. Benson and his children is subject to reformation, if the evidence warrants it.

The rule governing reformation of instruments is thus stated by 23 Ruling Case Law, p. 320, § 14 : "The grounds for the reformation of an instrument are that it fails to express the intentions of the parties thereto as the result of mistake, fraud or inequitable conduct, or both fraud and mistake ; fraud or inequitable conduct being on one side and mistake on the other. In the absence of satisfactory proof of either fraud or mistake, there is no basis for a Court of Equity to reform an instrument."

There is in the present case no question of fraud, or inequitable conduct, so these matters are not discussed. Continuing the citation from R. C. L., § 15 :

"The general rule, subject to various and varying exceptions, is that equity will reform instruments for the correction of errors when by mistake they express more or less than the parties intended."

. One general cardinal principle, clearly established, is that in the construction of instruments the obvious intention shall prevail, *provided it is not inconsistent with settled rules of law. Guery v. Vernon,* 1 Nott & McC., 71.

"When a Court is called upon to construe any paper, the first effort should be to ascertain the intention of the parties from the language which they have used." *Mellichamp v. Mellichamp,* 28 S. C., 129, 5 S. E., 333, 335.

"The principle upon which Courts enforce a reformation of an instrument is that, preceding the execution of the instrument, and as the inducement to its execution, the parties to the same had an understanding, an agreement, a contract; and, in the effort to reduce the evidence in writing of that contract, a mutual mistake was made, by which mistake, so made, the understanding, the agreement, the contract of the parties in relation to the subject-matter thereof was not carried into effect." *Brock v. O'Dell,* 44 S. C., 22, 21 S. E., 976, 979.

"Before a Court of Equity will reform a solemn instrument, *it must be shown by evidence which is the most clear and convincing, not simply it was a mistake on the part of one of the parties, but that it was a mutual mistake;* that both parties intended a certain thing; and that by mistake in the drafting of the paper did not get what both parties intended." (Italics added.) *Sullivan v. Moore,* 92 S. C., 307, 75 S. E., 497. See, also, *Jones v. Kelly,* 94 S. C., 349, 78 S. E., 17.

We have given this case painstaking thought and study. Our first reaction to the argument was that a case was presented by the instrument itself which not only justified it but required that the Court of equity reform the deed as prayed for—but our matured consideration is that the evidence does not justify the Court in overriding the established rule of law which has prevailed in this State since its organization as a commonwealth. Section 8694, Civil Code 1932, prescribes the form of deeds of conveyance of real estate for use in this State. In order to carry the fee, the conveyance must be to the grantee "his heirs and assigns

forever." It was originally held in this State that, in order to devise real estate, the testamentary instrument must contain words of inheritance, as in a common-law deed. The Legislature by its Act of 1824 declared that it should no longer be necessary to insert words of inheritance in a will in order to carry the fee. In all the hundred years which have passed since the passage of that Act, the lawmaking body of the state have not seen fit to adopt similar legislation in regard to deeds. It is manifest that Courts should be cautious in enforcing a rule which in effect does that which the Legislature has not done. We are not to be misunderstood in this regard, and therefore repeat that the Court is fully satisfied that a Court of Equity has the power and it is its duty in proper cases to reform a deed in order to carry out the intention of the parties to contract of convey-ance, even to the extent of inserting the words of inheritance necessary to carry the fee, when the facts and the evidence warrant it. Mindful of the solemn obligation resting upon us, we have again and again scanned and parsed the words of the deed of Silas Benson to John M. Benson and his children with a view to ascertain the precedent contract and mutual understanding of the parties. We are frank to admit that there is plausible suggestion in the language of the paper in support of appellant's contention that it was the intention of the parties that the deed convey the fee. But it is only a plausible suggestion. It lacks that clear and convincing power which evidence should have to warrant a Court in saying that parties to the instrument did not intend what the instrument says they intended.

Nor are the facts, *dehors* the deed, relied on by appellant, more potent than the deed itself.

It is the judgment of the Court that the conclusions and holdings of the Circuit decree that the deed from Silas Benson to John M. Benson and his children is a common-law deed, which for lack of words of inheritance does not carry the fee, and that the instrument lacks the attributes of a

covenant to stand seized to uses, and that the evidence does not warrant the reformation of the deed as is prayed for be and are affirmed.

But we do not concur in the conclusions of the Circuit Judge that the interest of Miss Florida Benson in the property covered by the mortgage, being foreclosed in this action, is a life estate only.

It is shown by the careful analysis of the evidence made by the Master's report that Miss Florida Benson has acquired other interests than that which came to her directly by inheritance under the deed of Silas Benson. She has purchased some interests and inherited others. It is shown by the master's report, and to this finding of his no exception is made, that she has a full life estate in tracts No. 1 and 2; an undivided one-half interest for life in tracts No. 3 and 5; an undivided two twenty-sevenths interest in fee in reversion in Lots Nos. 1 and 2 containing 36½ acres each; and two eighty-firsts undivided interests in fee in reversion in Lots Nos. 3 and 5, containing respectively 30½ acres and 36½ acres.

These interests are covered by the mortgage, and are those to be sold under foreclosure.

In this respect the ruling and order of the Circuit decree is revised. And the decree of foreclosure will be framed in accordance with this opinion.

As thus modified, the decree appealed from is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur.