14580

GOWDY v. KELLEY *ET AL.*

(194 S. E., 156)

*Mr. Charlton DuRant,* for appellants, cites:

*Messrs. McEachin & Townsend,* for respondent, cite:

December 8, 1937.

The opinion of the Court was delivered by Mr. Justice Fishburne.

On October 28, 1870, one Charles McAllister, of Williamsburg County, made, executed, and delivered the following deed: "Know all men by these presents that, I, Charles McAllister, Planter of the County of Williamsburg in the State aforesaid for and in consideration of the natural love and affection which I have and bear towards my beloved daughter, Sarah Margaret Kelley, wife of Dr. Middleton Kelley and for and in the consideration of the sum of One Dollar to me in hand paid by the said Sarah Margaret Kelley have given, g r a n t e d, bargained, sold, bequeathed and delivered and by these presents do freely give, grant and deliver unto the said Sarah Margaret Kelley my plantation on which I now reside during her natural life and at her death the said plantation is to become the absolute property of my grandson, Charles Middleton Kelley, above named, the said plantation is bounded as follows, to wit: [then follows the description], and I do hereby warrant and forever defend all and singular the said premises unto the said parties and against any person or persons whomsoever lawfully claiming or to claim the same or any part thereof."

A large portion of the tract of land described in the deed is located in the town of Lake City, now in Florence County, and has been subdivided into lots, upon which are located numerous business and residential properties. These lots were purchased by the present owners or by their predecessors in title, from Charles Middleton Kelley, the grandson

of the grantor, and they hold under deeds purporting to convey the fee.

Some time prior to the year 1917, the deed which we have set out came under the serious question as to the estate and interest conveyed by the grantor to Kelley, as a result of which the plaintiff, S. W. Gowdy, who owns one of the lots carved out of the original tract, brought this suit for the purpose of having the deed reformed. The prayer for judgment is: "That the said deed may be construed and if found defective through the omission of the word heirs, then that it be reformed and corrected so as to express and effectuate the intention of the said Charles McAllister."

The action was brought in 1917, and the heirs at law of Charles McAllister were made parties defendant, including Charles Middleton Kelley. By subsequent orders made in the cause all persons owning or claiming an interest in the property were joined as defendants.

The defendant Kelley answered, joining in the prayer of the complaint, and alleging that the deed in question vested in him a fee-simple title upon the death of his mother, and in addition thereto he set up an alleged contract between his mother and his father, Dr. Kelley, on the one hand, and Charles McAllister, on the other, for the transfer and conveyance of the fee to this land to Charles M. Kelley. He further alleged that the consideration for the deed consisted in the executed promise and agreement of his mother and father to leave their home in Clarendon County and move to the home of McAllister, in the then village of Lake City, and care for him.

The heirs at law of Charles McAllister, other than Charles Middleton Kelley, answered, denying the material allegations of the complaint, and alleged that in the deed from Charles McAllister Kelley took only a life estate in the property, and that the fee therein is now vested in them, together with Charles M. Kelley, as heirs at law of Charles McAllister.

. The progress of the case was interupted by various vicissitudes, including the death of many of the attorneys who were originally engaged on one side or the other. Several orders were passed in the cause from time to time, bringing in additional parties; and it is now stated in the record that all necessary and proper parties are before the Court. Several references were held in the course of the years for the taking of testimony, but the referee was not authorized to make any finding of fact or of law. The matter finally came on to be heard on February 1, 1937, before the Honorable Philip H. Stoll, Circuit Judge, who has filed his decree, holding that reformation of the deed should be ordered. He accordingly decreed that the deed be amended by adding after the name of the grantee, Charles Middleton Kelley, the words "and his heirs and assigns forever," so as to vest the fee to the premises in Charles M. Kelley.

The heirs at law of Charles McAllister, other than Charles M. Kelley (who is now dead), have appealed from the Circuit decree upon numerous exceptions, but the real issues are few.

By referring to the deed of Charles McAllister, it will be seen that he conveyed in terms a life estate unto his daughter, Sarah Margaret Kelley. The deed then provides "at her death the said plantation is to become the absolute property of my grandson, Charles Middleton Kelley," and it concludes with this warranty: "I do hereby warrant and forever defend all and singular the said premises unto the said parties and against any person or persons whomsoever lawfully claiming or to claim the same or any part thereof."

Unquestionably, under our decisions, the only interest acquired under this deed by Charles Middleton Kelley was a life estate, and not an estate in fee simple, there being no limitation to heirs.

Under the technical rules of the common law in force in this State, and generally recognized throughout the United States except where abrogated or modi-

fied by statute, it is essential to the creation of an estate in fee simple in a natural person by a deed that there be in the deed an express limitation to such person and his heirs. *Boyce v. Moseley*, 102 S. C., 361, 86 S. E., 771; *McMillan v. Hughes*, 88 S. C., 296, 70 S. E., 804; *McMichael v. Mc-Michael*, 51 S. C., 555, 29 S. E., 403; *Jones v. Swearingen*, 42 S. C., 58, 19 S. E., 947. As was said by this Court in *Groce v. Benson*, 168 S. C., 145, 167 S. E., 151, 153: "Section 8694, Civil Code, 1932, prescribes the form of deeds of conveyance of real estate for use in this State. In order to carry the fee, the conveyance must be to the grantee 'his heirs and assigns forever. It was originally held in this State that, in order to devise real estate, the testamentary instrument must contain words of inheritance, as in a common-law deed. The Legislature by its Act of 1924 declared that it should no longer be necessary to insert words of inheritance in a will in order to carry the fee. In all the hundred years which have passed since the passage of that Act, the lawmaking body of the State have not seen fit to adopt similar legislation in regard to deeds. It is manifest that Courts should be cautious in enforcing a rule which in effect does that which the Legislature has not done."

The respondent and the other defendant property owners insist, however, that they are entitled to a reformation of the deed so as to vest the fee in Charles Middleton Kelley, through mutuality of mistake, and urge upon us that the testimony taken in the cause supports this contention. The testimony, some of which is challenged upon the ground of being inadmissible, does not meet the requirements of the rule laid down by our Court and practically all other Courts, as a basis for reformation on this ground. The most that can be said for the evidence, tending to prove a contract or agreement between Charles McAllister and his daughter, Sarah Margaret Kelley, in this:

"Miss Adeline Belk testified that she knew Charles McAllister well and had lived in her youth on Dr. Kelley's

place, meaning the tract here involved and quite close to the home of Charles McAllister and Dr. Kelley; that at that time, Mrs. Kelley and Dr. Kelley were taking care of Charles McAllister; that Charles McAllister told her that he had given the tract here involved to Charles M. Kelley so that Charles M. Kelley could sell it, but that Ada, Charles' sister, could not sell hers; that he gave Charles M. Kelley his for his own and that Charles M. Kelley could sell or dispose of it if he wished to; * * *

"J. M. Matthews testified that he was 84 years old and had fought through the Confederate War; that he has known Charles McAllister all his life; that Dr. Kelley and his wife had come to take care of Charles McAllister after Matthews' return from the war; that he visited Charles McAllister and that Charles McAllister told him that he could not live there by himself and that he would rather have his daughter and Dr. Kelley to live there and take care of him than anybody; that he was going to give them the tract of land here involved; that Dr. Kelley had left a good position and land in Clarendon County to come; that Charles McAllister gave large tracts to his other children. * * *

"T. P. Driggers stated that he was 74 years old; that he had worked for Dr. Kelley in Williamsburg County while living in the house with Charles McAllister and the Kelleys in 1874; that he had worked for Dr. Kelley for quite a while in Clarendon County where Dr. Kelley had a very good place; that it was a constant trial to care for old Mr. McAllister and that he required a great deal of attention; that he had heard the old man say that he had given this land to Mrs. Kelley, his daughter, to take care of him as long as he lived; that he heard old man McAllister say several times that he had given it to his daughter and Charles; that he remembered this particular remark because the old man has said it several times."

From this testimony the conclusion is reached by the Circuit Judge: "It is plain from the deed and from the testi-

mony that Charles McAllister arranged with Dr. and Mrs. Kelley to leave Clarendon County and live with him on the tract of land here involved in order to care for him and manage his affairs, and for that service he conveyed the property to his grandson, Charles M. Kelley, in fee."

We are unable to concur in this conclusion.

In *Groce v. Benson, supra,* the Court quoted with approval the following:

" 'The principle upon which Courts enforce a reformation of an instrument is that, preceding the execution of the instrument, and as the inducement to its execution, the parties to the same had an understanding, an agreement, a contract; and, in the effort to reduce the evidence in writing of that contract, a mutual mistake was made, by which mistake, so made, the understanding, the agreement, the contract of the parties in relation to the subject-matter thereof was not carried into effect.' *Brock v. O'Dell,* 44 S. C., 22, 21 S. E., 976, 979.

" 'Before a Court of Equity will reform a solemn instrument, *it must be shown by evidence which is the most clear and convincing, not simply it was a mistake on the part of one of the parties, but that it was a mutual mistake;* that both parties intended a certain thing; and that by mistake in the drafting of the paper did not get what both parties intended.' (Italics added.) *Sullivan v. Moore,* 92 S. C., [305], 307, 75 S. E., 497. See, also, *Jones v. Kelly,* 94 S. C., 349, 78 S. E., 17."

In this case we are confronted with this situation: The deed as drawn conveys a life estate to Sarah Margaret Kelley, and, upon the falling in of that estate, a life estate is granted to Charles M. Kelley. The deed is devoid of words of inheritance necessary to the creation of a fee-simple estate. The testimony offered to prove that a contract was made between the parties to the effect that Sarah Margaret Kelley was to receive a life estate, with remainder in

fee to Charles, the grandson, is totally inadequate and insufficient for this purpose. The conclusion that such a contract was made cannot be referred to the evidence in this case. It would necessarily have to be based upon surmise, conjecture and inference; whereas our cases hold that testimony justifying reformation must be clear, satisfactory and convincing.

There is no positive, definite evidence showing a contract, or its terms. There is no testimony that Charles McAllister agreed to make any deed at all; no testimony that his daughter moved into his home with the understanding and upon the condition that her father would make a deed; no convincing testimony that the deed which was made had any reference whatever to an antecedent agreement entered into between the parties. We cannot assume such an agreement; it must be proved.

The statements attributed to Charles McAllister after the execution of the deed amount to nothing more than his construction of his own deed. In this connection, the respondent argues that the "intention" as shown by the deed must govern. "Intention" is a term of art, and signifies the meaning of the writing. But even the intention will not be allowed to violate an established rule of law. *Sandford et al. v. Sandford et al.,* 106 S. C., 304, 91 S. E., 294; *McMillan v. Hughes, supra; Wilson v. Watkins,* 48 S. C., 341, 26 S. E., 663.

The Court will reform an instrument on the ground of mistake under the following circumstances: "(1) Where there is a mutual mistake as to the facts upon which it is based, or as to the terms and stipulations embraced therein. (2) Where one of the parties only is under such mistake, either of the facts or the stipulations, and such mistake has been occasioned by the fraud, deceit, or imposition in any form of the other." *Kennerty v. Etiwan Phosphate Company,* 21 S. C., 226, 231, 53 Am. Rep., 669.

But, where one of the parties only is under such mistake, "equity will refuse its aid, except under very strong and extraordinary circumstances, showing imbecility or something which would make it a very great wrong to enforce the agreement, and this be made to appear by competent testimony of the clearest kind." *Kennerty v. Etiwan Phosphate Co., supra. Forrester v. Moon,* 100 S. C., 157, 85 S. E., 532.

It follows that in a suit for the reformation of a deed on the ground of mistake the plaintiff must make out a clear case. The evidence, not only of the agreement actually made, but of the mutuality of the mistake, must be clear, convincing, and satisfactory, for Courts of Equity do not grant the high remedy of reformation upon a mere probability. It is a rule of general acceptation that, in the exercise of this jurisdiction to reform written instruments, Courts of Equity proceed with the utmost caution. It must appear that the precise terms of the contract had been orally agreed upon between the parties and that the written instrument actually signed fails to be, as it was intended, an execution of the previous agreement, but expresses a different contract; and that this is the result of a mutual mistake. If there is no antecedent agreement to which the writing can be conformed, it is clear that reformation on the ground of mistake must be refused.

The respondent contends that the deed may be interpreted as a covenant to stand seized to uses, and that it presents every characteristic of such a deed: (1) Consideration of love and affection; (2) blood relationship, and (3) fee simple to commence *in futuro.* The deed does not permit of this construction. See *Bank of Prosperity v. Dominick,* 116 S. C., 228, 107 S. E., 914; *First Carolinas Joint Stock Land Bank v. Ford,* 177 S. C., 40, 180 S. E., 562.

Since we hold with the appellants on the main issue, it is

not necessary to pass upon other questions made by the appeal.

Reformation must be denied.

Judgment reversed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate on account of illness.