15197

MOORE *ET AL.* v. JEFFORDS *ET UX.*

(12 S. E. (2d), 737)

June, 1940.

*Messrs. Wilcox, Hardee, Houck & Wallace* for appellants,

*Mr. J. D. McInnis,* for respondents,

January 8, 1941.

*Per curiam.*

This is an action brought by the purchasers of certain tracts of timber for the purpose of obtaining a reformation of the timber deed so as to extend the time for cutting from the date specified in the deed, to wit, March 30, 1939, to November 21, 1939, and for incidental relief. The deed is dated November 22, 1937. The complaint alleges that the negotiations between the plaintiffs (respondents) and E. Ingram Jeffords, one of the defendants (appellants), the owner of the timber, were conducted through one, B. B. Sanders, who is described in the complaint as the agent of Jeffords. It is alleged that the proposition of the respondents, as conveyed by Sanders to Jeffords, was not acceptable. The price offered was rejected by Jeffords as too low, and the period of three years which the purchasers (respondents) desired to cut and remove the timber was longer than the owner was willing to allow. But it is alleged that as a result of considerable negotiations conducted through Sanders as agent, a price of $950.00 was verbally agreed upon, and that the period to be allowed for the cutting and removal of the timber was verbally fixed at two years.

It is then alleged that Sanders employed J. W. McInnis, Esq., an attorney of the Darlington bar, to prepare the deed, but that "when instructing the attorney as to the terms of the said timber deed (Sanders) erroneously calculated the time above mentioned, and instructed the attorney to designate March 30, 1939, as the expiration date, whereas the two-year period" would have expired November 21, 1939.

The timber deed was accordingly prepared to show the expiration of the date for cutting as March 30, 1939, and was duly executed. But, the complaint then alleges, "when the deed was presented to the plaintiffs (respondents), plain-

tiffs were assured by the agent of the defendant, E. Ingram Jeffords, that the same was prepared in accordance with and in conformity to the oral agreement  *  *  *."

The complaint further set forth that Sanders held a mortgage upon the tracts of timber in question, and agreed to release the timber upon the payment to him, for credit on the mortgage debt, of the proceeds of sale of the timber.

The respondents cut some of the timber prior to March 30, 1939, and then discontinued the cutting thereof. On or about the last-mentioned date respondents again entered upon the premises to resume their cutting operations, and the appellant E. Ingram Jeffords thereupon notified them that the time for cutting had expired. It is alleged that such action on the part of Mr. Jeffords caused the respondents to discover for the first time the "error" existing in the timber deed under discussion.

The prayer of the complaint is, as far as material here:

"1. That the oral agreement of sale be established as alleged and it be established that the said agreement has in part been performed;

"2. That the written timber deed be reformed so as to conform with the terms of the oral terms of sale;

"3. That the defendants E. Ingram Jeffords and Elizabeth Sellers Jeffords be required to specifically perform their contract of sale as established and that the said defendants be restrained from molesting the plaintiffs, their agents, servants and employees in the cutting and removing of the said timber."

Elizabeth Sellers Jeffords is the wife of her co-appellant, E. Ingram Jeffords, and was joined as a party to the cause because of her dower interest in the property.

The answers of the defendants (appellants) deny the alleged agency of Sanders, and the making of an oral agreement to allow two years within which to cut and remove the timber. They rely upon the timber deed as expressing the real and only agreement of the parties.

The other allegations of the pleadings are not material in the view we take of the case.

The cause was heard before the Judge of Probate for Darlington County, acting as Master. He concluded "that there was a mutual mistake as to a material element of the contract, and that the written instrument does not conform in that particular to the agreement". He held that the contract should be reformed. The Master's report was approved by the Circuit Judge, who likewise held "that by mutual mistake of the parties the time in which the purchasers were to have to cut the timber was incorrectly stated in the written agreement" and that this mutuality of mistake warranted a decree to reform the deed, and to certain additional relief resulting from the lapse of time beyond November 21, 1939, occasioned by the litigation.

The Circuit Judge was undoubtedly correct in treating the complaint as one for the reformation of a deed on the ground of mutual mistake. No other ground for relief is attempted to be stated in the complaint. And we need deal only with such of the exceptions of the appellants as raise the question whether the evidence discloses grounds for relief in this sphere of equity jurisdiction.

There are no material conflicts in the testimony.

B. B. Sanders, described in the complaint as the agent of the appellant Jeffords, owner of the property, held a mortgage upon it. The mortgage was long past due, and the property had been turned over to Sanders for rental under an arrangement whereby he was crediting the proceeds of the rent of the property on the mortgage debt. He was pressing the mortgagor for payment, and undertook to find a purchaser for the timber for the purpose of enabling the mortgagor to satisfy the mortgage debt to that extent. In this respect he was performing the dual service of assisting the mortgagor in avoiding the consequences of foreclosure and providing a means of obtaining a substantial payment on his mortgage claim. Any agency status that he might have held arose out of these circumstances alone.

Jeffords specifically denies that he ever appointed Sanders as his agent. He was under the impression that because of the default in the mortgage and the delivery of the possession of the property to Sanders, Sanders had a right to sell the timber, but he asserted the right to fix the price at which the timbed could be sold, and the period that was to be allowed to the purchasers within which to cut and remove the timber. Sanders recognized this right on the part of Jeffords.

The one of the respondents who handled the negotiations for the purchase testified that he had proposed to Sanders a period of three years within which to cut the timber. Sanders reported that Jeffords was willing to allow only one year, but that he compromised with Jeffords on a proposal that two years be allowed. The timber could have been cut in two or three months, and some of the timber was in fact cut within the contract period, but the cutting operations were suspended with the intention of resuming and completing them at a later date before November 21, 1939.

As the result of the negotiations between the parties conducted through Sanders, Mr. McInnis was employed to prepare the timber deed for both the purchasers and seller, and his compensation was paid partly by each. The instructions to Mr. McInnis as to the terms to be incorporated in the timber deed were given by Sanders. It is not questioned that the deed was prepared in accordance with such instructions. The complaint so alleges. And Sanders and McInnis witnessed the execution of the deed.

Neither of the purchasers was present when the instructions for the preparation of the deed by Mr. McInnis were given. Only Sanders and Mr. and Mrs. Jeffords and Mr. McInnis were present when the instrument was executed. Mrs. Jeffords testified that before the execution of the deed as prepared by Mr. McInnis, Mr. Jeffords read it aloud in her presence, and that of Mr. Sanders and Mr. McInnis, and this is not denied. She further testified that when Mr. Jeffords noticed that respondents had until March 30, 1939, to cut

and remove the timber he "asked why", and said "he didn't know what they would be doing all that time"; that Mr. Sanders told him the purchasers wanted two dormant seasons to cut it. Mr. Jeffords, in his testimony, explained that the term "dormant season" meant "winter season." He also testified that he finally agreed to the March 30, 1939, date for the cutting and removal of the timber, although he wanted it cut and removed sooner.

Following the execution of the instrument, it was delivered to one of the respondent purchasers, who did not read it, but put it in his safe. It was not read by him or by his partner in the deal until on or about March 30, 1939, when he was prohibited from further cutting on the property after that date, and until then he was under the impression that the deed gave him two years within which to cut and remove the timber.

Mr. McInnis apparently had not done any previous legal work for Jeffords, but was the attorney who usually prepared timber deeds for the respondents.

In our opinion the testimony, of which the foregoing is an adequate résumé, fails to show mutual mistake, or any other ground that would warrant the changing of the terms of the timber deed by judicial decree.

On the respondents' statement of the case it is not questioned that they understood, on the basis of their negotiations with Sanders, that they were to have two years within which to cut and remove the timber. According to Sanders that also was his understanding of the terms under which Jeffords was willing to sell the timber. But the owner of the timber is explicit in his denial that he ever agreed to give two years or that he authorized Sanders to agree to such a proposition. And the deed was in fact prepared by Mr. McInnis in strict accord with the instructions given by Sanders in the office of the respondents. There was no mistake as far as Mr. McInnis is concerned and no mistake as far as the owner of the property is concerned.

To the extent that Sanders may be regarded as having represented the owner in the negotiations with the respondents, it is significant that in his testimony he does not deal with the allegations of the complaint in which it is set forth that the expiration date of March 30, 1939, was inserted in the deed by Mr. McInnis under his instructions; nor does he say that in giving such instructions he made any error. The substance of his testimony merely is that the respondents agreed that the timber would have to be cut in two years and that he was authorized by Jeffords to close the deal on that basis. Jeffords denies giving such authority.

There was no representation to the respondents on the part of Sanders, Jeffords or McInnis that the deed contained a two-year period for cutting. It was only necessary for the respondents to read the deed when it was delivered to them through their attorney, to ascertain the true expiration date as therein contained.

No fraud is alleged, and none is deducible from the testimony .This is simply a case in which it appears that as far as respondents are concerned they were left under a misapprehension of the term of cutting that was to be inserted in the deed. They knew that the interest of Sanders arose solely out of the fact that he had a mortgage on the property and that the terms of sale had to be acceptable to Jeffords. Their attorney, who drew the deed, likewise of course knew this.

It is elementary that a written instrument, especially one relating to real estate, will not be reformed on the ground of mutual mistake unless both the fact of the mistake, and also the mutuality of the same are proved by clear and convincing testimony. Far from meeting this test, a careful consideration of the testimony leads us to the conclusion that the record affords no evidence whatsoever of a mutual mistake and that on the contrary, if the misapprehension under which the respondents labored reaches the status of a mistake in the legal sense, the undisputed testimony shows the mistake to be wholly unilateral.

In *Gowdy v. Kelley,* 185 S. C., 415, 194 S. E., 156, 159, Mr. Justice Fishburne in writing the opinion of the Court, quoted with approval from the opinion in *Sullivan v. Moore,* 92 S. C., 305, 307, 75 S. E., 497, wherein this Court approved the charge of the Circuit Judge in the language following: " 'Before a court of equity will reform a solemn instrument, it must be shown by evidence which is the most clear and convincing, not simply it was a mistake on the part of one of the parties, but that it was a mutual mistake; that both parties intended a certain thing; and that by mistake in the drafting of the paper did not get what both parties intended.' "

And the opinion further states: "It follows that in a suit for the reformation of a deed on the ground of mistake the plaintiff must make out a clear case. The evidence, not only of the agreement actually made, but of the mutuality of the mistake, must be clear, convincing and satisfactory, for courts of equity do not grant the high remedy of reformation upon a mere probability. It is a rule of general acceptation that, in the exercise of this jurisdiction to reform written instruments, courts of equity proceed with the utmost caution. It must appear that the precise terms of the contract had been orally agreed upon between the parties and that the written instrument actually signed fails to be, as it was intended, an execution of the previous agreement, but expresses a different contract; *and that this is the result of a mutual mistake.  *   *   *"* (Italics added.)

The case of *Jumper v. Queen Mab Lumber Co.,* 115 S. C., 452, 106 S. E., 473, upon which respondents rely, is clearly differentiated in the fact that there, as Mr. Justice Cothran specifically points out, a mutual mistake was clearly disclosed by the testimony, and that the written agreement involved in that case was contrary to the intention of both parties. Here that certainly cannot be said in so far as the appellants are concerned.

Other questions are made by the pleadings and are discussed in the report of the Master and in the decree of the

Circuit Judge, but in the view we have taken of the matter the point above decided disposes of the case adversely to the right of the respondents to relief.

The decree of the Circuit Court is reversed.