17364

PRINCE BELIN, Appellant, v. C. W. STIKELEATHER, J. W. WALLACE and LOUISE SALLENGER, nee WALLACE, Respondents

(101 S. E. (2d) 185)

*Messrs. William W. Bennett* and *Elliott D. Turnage,* of Florence, *for Appellant,*

*Messrs. George W. Keels* and *J. W. Wallace,* of Florence, *for Respondents,*

December 10, 1957.

Oxner, Justice.

This action was brought by the buyer, Prince Belin, to reform a written contract for the sale of real estate and for specific enforcement of the contract as reformed. Joined as defendants were C. W. Stikeleather, the seller, Louise Sallenger, his grantee, and J. W. Wallace who acted as agent of the grantee in her dealings with the plaintiff. Stikeleather demurred to the complaint on the ground that as to him it failed to state a cause of action. From an order sustaining this demurrer, there has been no appeal. The case was then referred to the Master of Florence County who after taking the testimony filed a report recommending that the relief sought by plaintiff be denied. His report was confirmed by the Circuit Judge. This appeal by the plaintiff followed. Since J. W. Wallace was only an agent of the grantee, the real contest here is between the plaintiff Belin and the defendant Mrs. Sallenger.

Plaintiff is a Negro with a sixth grade education. He served in the army approximately three years and reached the rank of corporal. He impressed the Master as being of above average intelligence. At the reference the defendants offered no testimony. We have, therefore, only that offered by the plaintiff, which may be summarized as follows:

On November 25, 1945, Stikeleather's agent took plaintiff to see a farm in Florence County and pointed out its boundaries. The agent had no plat. Plaintiff inquired as to the number of acres in the farm. The agent replied that he did not know. Plaintiff decided to purchase the property. The price agreed upon was $5,500.00 with a down payment of $1,000.00. The next day the down payment was made and plaintiff and Stikeleather entered into the following contract:

"Seller agrees to sell to buyer and to deliver fee simple title to buyer on January 1st, 1946, to property hereinafter described, and seller acknowledges receipt of the sum of One Thousand ($1,000.00) Dollars paid by buyer, sale price to be Five Thousand Five Hundred ($5,500.00) Dollars.

"Buyer agrees to execute six per cent mortgage for the difference when sale is closed. The mortgage is to provide for payments of Twenty-five ($25.00) Dollars per month, in addition to interest; for the first twenty (20) months, and then the mortgage is to provide for annual curtailments to suit the buyer, and, of course, interest.

"The property covered by this contract is located in Back Swamp Township No. 3 in the County of Florence, State of South Carolina, in Woodville School District No. 2, and is all of the land on the west side of the proposed new paved highway from Florence to Cashua Ferry Bridge across the Pee Dee River, except one-half of the lands to the top of the hill, which are known as the swamp portion to the tract of land."

Plaintiff testified that in signing the contract he thought the descriptions referred to the same property pointed out to him by the seller's agent. Plaintiff entered into possession on December 26, 1945, but was never given a deed. Some time later he reroofed and painted the dwelling, repaired the barns, fenced in the woodland and made other improvements. He said that apart from his own labor he expended between $1,000.00 and $1,500.00 in improving the property.

In May, 1946, the seller had his property surveyed. The plat showed the part cleared and that which was in woods and the property was divided into two tracts of 53.2 acres and 34.7 acres. On this plat the surveyor made the following notations: "Map of Eighty-seven and 9/10 acres, More or Less, Surveyed at Request of J. W. Wallace. Tract 'A', Containing Approximately 53.2 Acres, is Being Sold to Prince Belin. Surveyed May 29, 1946."

A month or two later the plat was delivered to the plaintiff. In reference to this, he testified as follows:

"Q. How did you gain possession of this plat? A. Mr. Wallace gave it to me.

"Q. When did he give it to you? A. In June or July of 1946.

"Q. What purpose were you given this plat, if any? A. To show me what land I was buying.

"Q. Did someone tell you that? A. Mr. Wallace said here is a plat of the place here."

At the reference this plat was handed to the plaintiff who testified that when the seller's agent took him out to look over the premises the boundaries shown him included the entire 87.9 acres as shown on the plat. It is the plaintiff's contention that this is what he bought and through mutual mistake of the parties the contract entered into by them did not correctly represent the property sold. He asks that the contract be reformed so as to include the entire 87.9 acres. The defendants contend that Stikeleather sold to plaintiff only the 53.2 acre tract.

Plaintiff commenced making payments of $25.00 a month to Stikeleather in January, 1946. From that date to September, 1947, his total payments to Stikeleather aggregated $525.00. On June 30, 1948, Stikeleather sold the entire tract of land to Mrs. Sallenger. Shortly thereafter Wallace, as the agent of Mrs. Sallenger, saw plaintiff and told him to make all subsequent payments to him or to his mother, Mrs. Sallenger. Plaintiff then saw Stikeleather and was told that this was proper. The record shows that the following payments were made to Mrs. Sallenger: August 25, 1948, $400.00; November 17, 1949, $200.00; September 5, 1950, $400.00; September 25, 1951, $400.00, making a total of $1,400.00. Plaintiff testified that during 1952 he went to Wallace's home and offered to pay $400.00. Wallace refused to accept the money. Plaintiff then went to see an attorney. After this attorney delayed for some time in taking action, plaintiff secured other counsel and this action was commenced in May, 1954.

The Court below denied reformation. Specific performance of the contract as written was also refused upon the grounds (1) that plaintiff had an adequate remedy at law, (2) that he had not fulfilled the terms of the written contract, and (3) that he was guilty of laches. In addition to

denying any relief to the plaintiff, the Court required him to vacate the premises and to pay a rental of $400.00 for 1955, which amount was made a lien on plaintiff's crops for that year.

We shall consider first plaintiff's right to reformation. On this issue the burden was upon him to show by clear and convincing evidence that there was not only a mistake but that it was reciprocal and common to both parties. *Gowdy v. Kelley,* 185 S. C. 415, 194 S. E. 156; *Moore v. Jeffords,* 195 S. C. 512, 12 S. E. (2d) 737. "Before a court of equity will reform a solemn instrument, it must be shown by evidence which is the most clear and convincing, not simply it was a mistake on the part of one of the parties, but that it was a mutual mistake; that both parties intended a certain thing; and that by mistake in the drafting of the paper did not get what both parties intended.". *Sullivan v. Moore,* 92 S. C. 305, 75 S. E. 497. Where only one of the parties is under such mistake, "equity will refuse its aid, except under very strong and extraordinary circumstances, showing imbecility or something which would make it a great wrong to enforce the agreement, and this must be made to appear by competent testimony of the clearest kind.". *Kennerty v. Etiwan Phosphate Co.,* 21 S. C. 226.

We do not think the plaintiff has met the test laid down by the foregoing authorities. He may have thought that he was buying the entire tract but it does not clearly appear that Stikeleather so understood. While we do not agree with the Master and Circuit Judge that the written contract was plain and unambiguous and that parol evidence as to what occurred prior to its execution was inadmissible, the contract definitely discloses that some portion of the seller's land was to be excluded. In addition to this, six or eight months after the execution of this contract plaintiff was given a plat which clearly stated that only the 53.2 acre tract was sold to him. Plaintiff admitted that it was given him to show "what land I was buying." He kept this plat and so far as the record discloses,

made no contention that the agreement was for the sale of the entire tract until this action was commenced. These circumstances rather strongly indicate that both parties understood that the whole tract was not being sold. *Federal Land Bank of Columbia v. Summer,* 168 S. C. 510, 167 S. E. 830; *Main v. Muncaster,* 171 S. C. 269, 172 S. E. 222. This does not mean that reformation should be denied upon the ground of the plaintiff's negligence, for ordinarily negligence does not bar such relief. *Kaiser v. Carolina Life Insurance Co.,* 219 S. C. 456, 65 S. E. (2d) 865. But the facts stated tend to show any mistake on the part of the plaintiff was the result of his own negligence and that the mistake was a unilateral and not a mutual one.

We have carefully considered *Martin v. LaBoon,* 116 S. C. 97, 107 S. E. 320, strongly relied on by plaintiff. That case involved a different factual situation. The proof there showed a mutual mistake by clear and convincing evidence. As stated in *Kaiser v. Carolina Life Insurance Co., supra,* [219 S. C. 456, 65 S. E. (2d) 870] "each suit for reformation stands on its own peculiar facts."

Having concluded that the Court below properly denied reformation, we turn to the alternate relief sought by plaintiff. He contends that in any event, he is entitled to enforcement of the contract as written, which defendants concede covers the 53.2 acre tract. We think the facts fully justify this relief and that the lower Court erred in not granting it.

The first ground upon which the Court denied specific performance was that the plaintiff had an adequate remedy at law. This clearly constitutes no ground for denying specific performance of a written contract for the sale of land. It is elementary that the jurisdiction of equity to grant specific performance of an agreement of this kind does not depend upon the inadequacy of the legal remedy in the particular case. *Singleton v. Cuttino,* 107 S. C. 465, 92 S. E. 1046; *Adams v. Willis,* 225 S. C. 518, 83 S. E. (2d) 171; 49 Am. Jur., Specific Performance, Section 92.

Nor is there any sound basis for the conclusion of the Court below that specific performance should be denied because the plaintiff failed to perform his part of the contract. Plaintiff was required to pay $25.00 per month, in addition to interest, for the first twenty months, after which he was to make "annual curtailments to suit the buyer," together with interest. During the first twenty months the property was owned by Stikeleather to whom payments were regularly made. The record disclosed no complaint by him as to the manner in which the payments were made. Apparently he was satisfied with plaintiff's performance. The period of twenty months had expired when Mrs. Sallenger purchased the property in June, 1948. Plaintiff made annual payments to her which she apparently accepted without complaint for a period of four years. It will be remembered that during this time the contract provided that the annual curtailments were to be in such amounts as suited the plaintiff. Wallace, Mrs. Sallenger's agent, refused to accept the annual curtailment offered in 1952. Under the facts above stated a Court of Equity would not be justified in denying specific performance because of any breach of the contract by plaintiff. Moreover, this contract was breached by the seller at the outset by failing to carry out his agreement to deliver deed to the plaintiff on January 1, 1946. It is suggested in the Master's report that the payments made were very small and were not equal "to a fair rental value of the property." But we are not at liberty to make a contract for the parties.

Stress is laid by the Master and Circuit Judge upon the fact that plaintiff did not tender any payments after the refusal by Mrs. Sallenger's agent to accept the payment offered in 1952. Aside from the fact that the rules in equity concerning necessity of tender are not as stringent as in law cases, plaintiff was not required to continue offering payments after this refusal. *Speed v. Speed,* 213 S. C. 401, 49 S. E. (2d) 588.

Finally, it is said that plaintiff was guilty of laches in waiting for a period of two years to bring suit after the refusal of Mrs. Sallenger's agent to accept payment in 1952. This delay appears to have been brought about by the inaction of counsel first employed by plaintiff. Be that as it may, absolutely no prejudice has been shown as a result of this delay. Moreover, it has been said that "a vendee in possession cannot be barred from specific performance by mere delay, however long, because his possession is a continued assertion of his claim and he may rest in security until his title or right of possession is attacked." 49 Am. Jur., page 91.

That portion of the order of the Circuit Judge denying reformation is affirmed. In all other respects said order is reversed and the case is remanded to the Circuit Court for the purpose of determining the amount due on this contract and entering an appropriate decree of specific performance.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.