623 S.E.2d 853

**HONORAGE NURSING HOME OF FLORENCE, S.C., INC., Appellant,**

**v.**

**FLORENCE CONVALESCENT CENTER, INC., Respondent.**

**Honorage Nursing Home of Florence, South Carolina, Inc., Appellant,**

**v.**

**Genevieve Powell, Respondent.**

Nos. 2002–CP–21–120, 2002–CP–21–1058.

Court of Appeals of South Carolina.

Heard Sept. 12, 2005.

Decided Nov. 14, 2005.

Rehearing Denied Jan. 19, 2006.

Charles Craig Young, of Florence, for Appellant.

Jeffrey L. Payne, of Florence, for Respondents.

HEARN, C.J.:

Honorage Nursing Home of Florence, South Carolina, Inc. appeals (1) the circuit court order vacating the default judgment against Florence Convalescent Center, Inc. (FCC), and

(2) the circuit court's grant of summary judgment in favor of FCC. We affirm.

## FACTS

Honorage Nursing Home instituted this action against FCC for allegedly breaching the lease between the parties for a nursing home building in Florence, South Carolina. In 1975, FCC began leasing the building from Honorage. FCC operated the nursing home from that time until December 31, 2000.

In September of 2000, Genevieve Powell, the President of FCC, informed Howard Clarke, the President of Honorage, that she wanted to terminate the lease and sell the furniture and fixtures in the nursing home to Honorage. Over the course of the next few months, a series of negotiations took place between Clarke's attorney, Porter Stewart, and Powell's attorney, John Chase. The attorneys for the parties ultimately entered into a sales agreement on December 29, 2000, which provided for the purchase of the furniture and fixtures and the termination of the lease. The significant terms of the sales agreement were: (1) Honorage agreed to terminate the lease; (2) Honorage forgave the November and December 2000 rent payments that were due under the lease; (3) Honorage agreed to pay the remaining property taxes for 2000; (4) FCC sold Honorage all of the furniture and fixtures in the nursing home, and (5) Honorage agreed to pay FCC $5,000 for FCC's computers, printers, and modems, together with all software and information therein.

On December 31, 2000, in reliance on the agreement, FCC vacated the nursing home and left behind all furniture and fixtures. Honorage took possession and began operating the nursing home on January 1, 2001.

Honorage filed this action on January 25, 2002, claiming FCC had breached the lease agreement. Honorage sought to recover outstanding rent, taxes, and other items due under the lease. Also on that date, Honorage filed a petition to serve FCC pursuant to section 15–9–210(c) of the South Carolina Code (Supp.2005), claiming it could not locate FCC's registered agent. The circuit court entered an order allowing Honorage to serve FCC pursuant to this statute. However, the circuit court order incorrectly stated Honorage could serve FCC by mail at "the corporation's last known place of busi-

ness on record with the Secretary of State's office." Section 15–9–210(c) provides the summons and complaint must be sent to "the address of the company's principal office which is listed on the last filed annual report of the corporation." The last filed annual report for FCC listed its address as 2512 Newcastle Road, Florence, South Carolina, and stated Powell was the sole director and officer of the corporation.

Thereafter, Honorage mailed the summons and complaint to Route 1, Clarke Road, Florence, South Carolina 29501, which was the address listed with the Secretary of State's office. This address was the same address used by Honorage's own registered agent, Howard Clarke, and it was also the physical address for the nursing home that FCC had previously leased for 25 years. Honorage never forwarded the summons and complaint to Powell or FCC.

After mailing the summons and complaint to its own address, Honorage conducted a default judgment hearing on June 4, 2002. Honorage also mailed notice of the hearing to the nursing home only and not to Powell or FCC. Neither FCC nor Powell made an appearance at the damages hearing. On March 19, 2002, the circuit court entered a default judgment against FCC in the amount of $1,281,779. The default order prepared by Honorage also contained a finding that FCC's "corporate veil is pierced and that its sole shareholder is to be held personally liable for the judgment entered herein." Powell, however, was not a party to the initial action.

Powell learned of the original judgment when Honorage filed a declaratory judgment action against her to collect the damages. Powell filed a motion to set aside the entry of default against FCC.

The circuit court set aside the entry of default against FCC and also granted FCC summary judgment on the issue of the damages. The circuit court held Honorage had voluntarily terminated the lease as of December 29, 2000, and, therefore, FCC did not breach the agreement. Honorage's appeal follows.

## LAW/ANALYSIS

### I. Default Judgment

Honorage argues the circuit court improperly set aside the entry of default against FCC. We disagree.

██ Upon motion, the circuit court may relieve a party from a final judgment pursuant to Rule 60(b), SCRCP, where the moving party demonstrates the judgment or order was induced by, among other things, mistake, inadvertence, surprise, or excusable neglect. *Hillman v. Pinion ex. rel Estate of Hillman,* 347 S.C. 253, 256, 554 S.E.2d 427, 429 (Ct.App. 2001). Relief from judgment under Rule 60, SCRCP, rests within the sound discretion of the circuit court, and the circuit court's findings will not be disturbed on appeal absent an abuse of that discretion. *Thompson v. Hammond,* 299 S.C. 116, 119, 382 S.E.2d 900, 903 (1989); *McCall v. Ikon,* 363 S.C. 646, 651, 611 S.E.2d 315, 317 (Ct.App.2005) (rehearing denied).

██ In this action, Honorage clearly failed to comply with section 15–9–210(c) in attempting to serve FCC. Section 15–9–210(c) clearly provides the summons and complaint must be sent to "the address of the company's principal office which is listed on the last filed annual report of the corporation." Honorage did not do so. FCC's last annual report was filed with the Department of Revenue in March 2001. This annual report indicated FCC's address for service of process was 2512 Newcastle Road in Florence. FCC was never served at that address and, accordingly, never received notification of the action against it. Because Honorage failed to comply with the service requirements of section 15–9–210(c), the circuit court correctly set aside the entry of default against FCC.

Additionally, any attempt to serve FCC under section 15–9–210(c) was improper. Honorage's attorney argued to this court that he was under no obligation to locate FCC's registered agent prior to service under section 15–9–210(c). We strongly disagree.

██ "A suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring parties into court." *McCall,* 363 S.C. at 651, 611 S.E.2d at 317 (citing *Griffin v. Capital Cash,* 310 S.C. 288, 292, 423 S.E.2d 143, 146 (Ct.App. 1992)). Section 15–9–210(c) is designed to assist a party when a corporation has no registered agent or an agent that could not be served with "*reasonable diligence.*" (emphasis added). In this case, Honorage's attorney informed the circuit court he had complied with the requirements in section 15–9–210, and

that he attempted to locate the registered agent for FCC. Yet, Honorage knew the registered agent for FCC had been deceased for almost twenty years because Honorage's president and controlling shareholder, Howard Clarke, had served as a pallbearer in the registered agent's funeral. Moreover, Clarke knew Powell was the sole shareholder of FCC as he had known her for over forty years.

Therefore, the circuit court did not abuse its considerable discretion in setting aside the judgment against FCC under Rule 60(b), SCRCP.

## II. Summary Judgment

In reviewing the grant of a summary judgment motion, this court applies the same standard which governs the trial court: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991). In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 61, 504 S.E.2d 117, 121 (1998). On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below. *Osborne v. Adams*, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001).

Honorage alleges the circuit court erred in granting summary judgment to FCC on the breach of the lease issue. Honorage asserts the lease did not terminate because any agreement to do so did not satisfy the Statute of Frauds. We disagree.

■■ "The statute of frauds merely requires some memorandum or note of the agreement relating to real estate to be in writing and signed by the party charged therewith or his agent, and does not require a formally executed contract." *Blocker v. Hundertmark, et al.*, 204 S.C. 269, 274, 28 S.E.2d 855, 856 (1944). The writing must reasonably identify the subject matter of the contract, sufficiently indicate a contract

has been made between the parties, and state with reasonable certainty the essential terms of the agreement. *Player v. Chandler*, 299 S.C. 101, 107, 382 S.E.2d 891, 895 (1989).

■ Porter Stewart, Honorage's attorney at the time, testified that a letter he wrote in 2001 set forth the sales agreement on behalf of Honorage and Howard Clarke. In this letter, Stewart outlined the terms of the agreement between Honorage and FCC. Moreover, Stewart also testified Clarke had full knowledge of the letter, and authorized the terms of the sales agreement that expressly provided for the "termination of the lease between the parties." This letter sufficiently satisfies the requirements of the Statute of Frauds.

■ Moreover, even if the letter was insufficient, the part performance exception to the Statute of Frauds would apply. "Sufficient part performance of a parole contract to convey or devise real estate will, in equity, remove agreement from operation of statute of frauds." *Parr v. Parr*, 268 S.C. 58, 65, 231 S.E.2d 695, 698 (1977).

Here, the parties entered into a sales agreement with one of the conditions being the termination of the lease. Pursuant to the agreement, FCC vacated the premises, and relinquished control over the furniture and fixtures in the nursing home to Honorage. Honorage took possession of the premises immediately after FCC vacated, and remained in possession thereafter. It is clear that both parties have partially performed in reliance of this sales agreement.

Therefore, the circuit court correctly concluded no genuine issue as to any material fact existed regarding the termination of the lease, and FCC was entitled to judgment as a matter of law.

## CONCLUSION

For the aforementioned reasons, the circuit court's decision to set aside the default judgment against FCC and grant of summary judgment in favor of FCC on the breach of the lease is hereby

**AFFIRMED.**

BEATTY and SHORT, J.J., concur.