Rodger D. SHAY, Jr., Plaintiff,

v.

Diane AUSTIN, Defendant.

Civil Action No. 9:05–2835–PMD.

United States District Court,
D. South Carolina,
Beaufort Division.

Oct. 19, 2006.

Jeffrey S. Tibbals, Nexsen Pruet Jacobs Pollard and Robinson, Charleston, SC, for Plaintiff.

Stephen E. Carter, McNair Law Firm PA, Hilton Head Island, SC, for Defendant.

### ORDER

DUFFY, District Judge.

This matter is before the court upon Plaintiff Rodger D. Shay, Jr.'s ("Plaintiff" or "Shay") motion for summary judgment. For the reasons set forth herein, the court grants Plaintiff's motion.

### *BACKGROUND* [1]

On or around May 10, 2005, Plaintiff initialed and executed a document labeled "Contract of Sale–Offer and Acceptance" (the "Contract") for certain real property described as Lot 2 Oakridge Plantation, located at 35 Beauregard Boulevard, Daufuskie Island, South Carolina 29915 (the "Property") (Plaintiff's Exhibit A.) Plaintiff delivered the signed Contract to Tom Heffner ("Heffner"), realtor for Defendant Diane Austin ("Defendant" or "Austin"). On or about May 15, 2005, Heffner delivered the Contract executed by Plaintiff to Defendant, who initialed and signed the document. Defendant additionally wrote "Time is of the essence" and her initials in the margin next to Section 7 of the Contract, which provided for a closing date of May 25, 2005. (Plaintiff's Exhibit B.) Plaintiff did not initial the "Time is of the essence provision," but he testified he knew of Defendant's desire to close on time. (Deposition of Rodger D. Shay, Jr. at 25, lines 15–17.) The purchase price for the real estate was $840,000, and Section 13 of the Contract required Defendant to convey marketable title to the Property to Plaintiff in fee simple by proper deed. (Plaintiff's Exhibit B.)

On or before May 23, 2005, Plaintiff put his earnest money deposit of five thousand dollars in a Nexsen Pruet escrow trust. (Plaintiff's Exhibit C.) The paralegal for Defendant's attorney prepared an original deed, which the paralegal for Plaintiff's attorney received on May 26, 2005. Because of incorrect wording, a correction had to be made; the paralegal for Plaintiff's attorney received the corrected deed via e-mail on May 27, 2005. (Declaration of Margaret B. Luckey ¶¶ 8–9.) This same e-mail provided the wiring instructions for Defendant's account for the closing proceeds. (Declaration of Margaret B. Luckey ¶ 10.) May 27, 2005 was a Friday, and the following Monday, May 30, 2005, was Memorial Day.

At the time the parties entered into the Contract, the Property was encumbered by a mortgage (the "Mortgage") dated November 29, 2004, and held by Wachovia Bank, National Association ("Wachovia") recorded in the amount of $1,000,000. The Mortgage secured the Property as well as an adjacent lot owned by Defendant. Plaintiff attempted to procure a partial release of the Mortgage in order to receive a clear title, and on May 24, 2005 at 5:20 p.m., Wachovia sent Plaintiff's paralegal a document entitled "Worksheet for Partial Releases and Related Requests" (the "Worksheet"). (Plaintiff's Exhibit G.) The Worksheet contained items that Wachovia required in order to complete a request for partial release. Plaintiff's paralegal submitted a draft of the Worksheet to Wachovia in hopes that Wachovia would sign the document and release the Mortgage. Wachovia, however, instructed Plaintiff's paralegal to "review the form that was provided to you. The documentation for the release will need to be forwarded to the address provided." (Plaintiff's Exhibit H at 1.)

Also on May 24, 2005, Plaintiff's paralegal wrote an email to Defendant's paralegal that stated, "It is the custom in this area that the seller's attorney provide documentation for releases (as part of the delivery of good, clear title) when the mortgage is not being satisfied by the lender. . . . We will deliver the release amount to the lender in exchange for a

---

**1.** In her Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Defendant does not indicate what facts, if any, are in dispute. Defendant appears to make only legal arguments in her memorandum, so this court must generally rely on Plaintiff's exhibits.

signed release." (Plaintiff's Exhibit I at 1.) During a phone conversation between the two paralegals on the morning of May 25, 2005, Defendant's paralegal said she would deliver the materials to Wachovia, and the two agreed that Plaintiff would deliver the necessary funds in exchange for a commitment letter from Wachovia agreeing to partially release the Mortgage on receipt of the funds. (Declaration of Margaret B. Luckey ¶ 5.)

Plaintiff asserts that Wachovia did not sign a partial release for the Mortgage, "nor provide a commitment to release the Mortgage on May 25 or at any time thereafter." (Plaintiff's Mem. at 6.) In her Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Defendant does not appear to contradict this fact, as the memorandum does not indicate that Wachovia ever signed a partial release. On Friday, May 27, 2005, Defendant requested that the proceeds for the transaction be wired to her account, and on Tuesday, May 31, 2005, Plaintiff wired the funds necessary to close the transaction to his attorney's escrow account. (Plaintiff's Exhibit J.) Defendant, however, never received these funds, and Plaintiff never received a commitment letter regarding release of the Mortgage from Wachovia.

On Wednesday, June 1, 2005, Defendant's attorney sent a letter to Plaintiff's attorney via facsimile. This letter informed Plaintiff's attorney that Defendant was cancelling the contract because the deed had been delivered but funds had not been received. (Plaintiff's Exhibit K.) Plaintiff's attorney responded that same day, saying Plaintiff had not received the letter from Wachovia agreeing to a partial release from the Mortgage. (Plaintiff's Exhibit L.) When Defendant's attorney indicated he believed the Worksheet constituted a commitment from Wachovia to pro-

vide a partial release, Plaintiff's attorney again responded by facsimile, stating Defendant bore the responsibility of providing documentation to Wachovia. (Plaintiff's Exhibit M.) This facsimile further provided, "Your offer to call this transaction off is equally unacceptable. [Plaintiff] intends to move forward with this transaction and acquire this property." (Plaintiff's Exhibit M.)

On August 24, 2005, Defendant sold the lot adjacent to the Property to another buyer. The Defendant testified that she made this sale after the sale to Plaintiff "did not close because I wouldn't have sold both of my lots." (Deposition of Diane Austin p. 41, lines 4–5.) Plaintiff filed suit for breach of contract on September 30, 2005, seeking specific performance and attorney's fees. (Complaint at 5.)

### STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that par-

ty's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party 'is particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548.

## DISCUSSION

### A. Specific Performance

■ Generally speaking, "[s]pecific performance should be granted only if there is no adequate remedy at law and specific enforcement of the contract is equitable between the parties." *Ingram v. Kasey's Assocs.*, 340 S.C. 98, 105, 531 S.E.2d 287, 291 (2000). For specific performance to be an appropriate remedy, a court of equity must find the following:

(1) there is clear evidence of a valid agreement; (2) the agreement had been partly carried into execution on one side with the approbation of the other; and (3) the party who comes to compel performance has performed his or her part,

or has been and remains able and willing to perform his or her part of the contract.

*Ingram*, 340 S.C. at 106, 531 S.E.2d at 291. Although a decree of specific performance rests with the discretion of the court, this discretion is "to be exercised in accordance with the special rules and practices of equity, and with regard to the facts and circumstances of the particular case." *Humble Oil & Refining Co. v. DeLoache*, 297 F.Supp. 647, 651 (D.S.C.1969). Indeed,

[w]here the agreement, be it an option lease or contract of sale, is unobjectionable and is regular and valid, it, as the Court remarked in *Sims v. Nidiffer*, [127 S.E.2d 85 (Va.1962)], 'is much a matter of course for a court of equity to decree specific performance of it as it is for a court of law to award damages for its breach.'

*Humble Oil & Refining Co.*, 297 F.Supp. at 651 (quoting *Sims*, 127 S.E.2d at 87).

■ Plaintiff has demonstrated he is entitled to specific performance pursuant to the factors listed in *Ingram*. See *Ingram*, 340 S.C. at 106, 531 S.E.2d at 291. Plaintiff alleges a valid agreement exists, and in her Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Defendant does not appear to dispute this allegation.[2] Moreover, Plaintiff has dem-

---

**2.** In her Answer, Defendant denies the existence of a valid agreement, especially in light of Plaintiff's failure to initial the "time is of the essence" clause. (Defendant's Ans. ¶¶ 4–5.) A valid contractual writing "must reasonably identify the subject matter of the contract, sufficiently indicate a contract has been made between the parties, and state with reasonable certainty the essential terms of the agreement." *Honorage Nursing Home of Florence, S. C., Inc. v. Florence Convalescent Center, Inc.*, 367 S.C. 108, 114–15, 623 S.E.2d 853, 856 (Ct.App.2005). Price, time, and place are among those terms considered essential to a binding contract. See *Edens v.*

*Laurel Hill, Inc.*, 271 S.C. 360, 364, 247 S.E.2d 434, 436 (1978). In this case, the Contract shows Plaintiff and Defendant respectively agreed to buy and sell a specified lot on Daufuskie Island for the price of $840,000.

This court finds Plaintiff's failure to sign the "time is of the essence" clause does not invalidate the Contract. Although implied terms are not favored in the law, equity does not require every term or condition to be set forth in a contract. See *Maccaro v. Andrick Development Corp.*, 280 S.C. 96, 100, 311 S.E.2d 91, 94 (Ct.App.1984). Specifically, a "time is

onstrated that the agreement has been partly carried into execution by him with the approbation of Defendant and that Plaintiff has performed his part, or has been and remains able and willing to perform his part of the contract. Defendant does not appear to dispute these facts. The undisputed evidence reveals Plaintiff partly carried the agreement into execution with the approbation of Defendant because the transaction was nearly consummated, lacking only a commitment letter from Wachovia and the wiring of the closing funds to Defendant. Furthermore, Plaintiff alleges past and present ability and willingness to perform his obligations under the Contract. South Carolina does not require Plaintiff to have made actual tender of the funds necessary to close in order to obtain the remedy of specific performance. *Speed v. Speed*, 213 S.C. 401, 49 S.E.2d 588, 593 (1948). Plaintiff only need state in his pleading that he is ready, willing, and able to perform his obligations under the Contract. *Maccaro*, 280 S.C. at 101, 311 S.E.2d at 94. Here, Plaintiff put the funds in an escrow account held by his attorney. (Plaintiff's Exhibit J.) This action and Plaintiff's assurances of readiness indicate that Plaintiff is ready, willing, and able to tender payment. (Complaint ¶¶ 17, 27.)

In her Memorandum in opposition to Plaintiff's Motion for Summary Judgment, Defendant makes two arguments: (1) specific performance is not an appropriate remedy because "[t]here is no evidence that the subject property has any special

value over any other oceanfront residential site on Daufuskie Island" and (2) "[t]estimony and evidence in support of the affirmative defense of laches should be presented at trial ..." (Defendant's Mem. at 9–10.) To support Defendant's argument that Plaintiff did not attach any special value to the Property, Defendant quotes Plaintiff's deposition:

Q. Prior to signing the contract to purchase this property, did you determine that the property had any special value or special features that attracted you?

A. It's on the ocean and had a great view.

Q. Okay. But is it—I don't—I'm just trying to pin down—I guess what I'm thinking is, there are a number of properties around that are on the ocean and have great views. Was there anything in particular about this property that struck you?

A. I don't know how to respond. No, there was nothing.

Q. I may not be asking the question the right way. I'm just trying to elicit a response, for instance, why this property would be different than, say, the property that's next door that also has an ocean view?

A. I still can't answer.

Q. Okay. And, again, if I understood your testimony—I always want to make sure I don't put words in any witness's mouth, so please correct me if I'm wrong. But I think you testified that

of the essence" clause may be implied. *See Hobgood v. Pennington*, 300 S.C. 309, 314, 387 S.E.2d 690, 693 (Ct.App.1989). Plaintiff presented undisputed testimony that he understood Defendant's position that it was very important to close by May 25, 2005. (Deposition of Rodger D. Shay, Jr. at 25, lines 15–17.) Plaintiff's actions, including depositing five thousand dollars into an escrow account and contacting Wachovia with respect to the

Mortgage, evidence his prompt efforts to comply with the Contract's closing date. Defendant's responsive actions, such as preparing an original deed, seller's affidavit, 1099 federal tax form, a closing statement, and a Waiver of Repurchase option, also confirm the existence of a valid agreement. (*See* Plaintiff's Exhibit E.) This court accordingly finds that a valid contract existed between Plaintiff and Defendant.

you had not viewed the property prior to signing the contract?

A. I had been on that area, but I did not say this is the particular spot. I don't—I don't believe I put it that way. I'm pretty much confident I did not.

Q. In any event, you weren't thinking about that at the time you signed the contract, thinking about any particular piece of property?

A. Correct. I knew the area. And, of course, I have the description. I had the Oakridge—you know that little plat.

(Defendant's Exhibit 1, Deposition of Rodger D. Shay, Jr. p. 26, line 8 to p. 27, line 15.)

Defendant argues this testimony indicates specific performance is not an appropriate remedy because "[t]here is no evidence that the subject property has any special value over any other oceanfront residential site on Daufuskie Island ..." (Defendant's Mem. at 9.) However, Defendant cites no legal authority to support her argument, and the South Carolina Supreme Court has stated, "When land is the subject matter of an agreement the jurisdiction of equity to enforce specific performance is undisputed, and does not depend on the inadequacy of the legal remedy in the particular case." *Adams v. Willis*, 225 S.C. 518, 83 S.E.2d 171, 175 (1954); *see also Belin v. Stikeleather*, 232 S.C. 116, 101 S.E.2d 185, 188 (1957). Thus, even if Plaintiff did not view the property before signing the Contract and had no special purpose in purchasing the Property,[3] Plaintiff is still entitled to an award of specific performance.

**B. Laches**

 Defendant next argues this court should not grant summary judgment because "[t]estimony and evidence in support of the affirmative defense of laches should be presented at trial ..." (Defendant's Mem. at 10.) Laches is " 'neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done.' " *Queen's Grant II Horizontal Property Regime v. Greenwood Development Corp.*, 368 S.C. 342, 359, 628 S.E.2d 902, 912 (Ct.App.2006) (quoting *Gordon v. Drews*, 358 S.C. 598, 612, 595 S.E.2d 864, 871 (Ct.App.2004)). " 'Delay alone is not enough to constitute laches; it must be unreasonable, and the party asserting laches must show prejudice.' " *Queen's Grant II*, 368 S.C. at 359, 628 S.E.2d at 912 (quoting *Gordon*, 358 S.C. at 612, 595 S.E.2d at 871). "The question of whether the elements of laches have been established is one of fact and its determination rests largely within the discretion of the court. Each case must depend upon the particular circumstances present, taking into consideration among other things whether the delay has w[or]ked injury, prejudice or disadvantage to one of the parties." *Grossman v. Grossman*, 242 S.C. 298, 130 S.E.2d 850, 855 (1963).

To establish the defense of laches, Defendant must show "(1) a delay (2) that is

---

**3.** When asked whether he wanted to purchase the Property to build a home, for investment, to build a speculation home to sell, or to hold it hoping for an increase in value, Plaintiff responded, "Still juggling with that. I like the idea of putting a house on it. It's an awfully nice spot. But haven't drawn any conclusions." (Defendant's Exhibit 1, Deposition of Rodger D. Shay, Jr. p. 13, lines 19– 21.) The fact that Plaintiff is unsure what he will do with the Property once acquired is not relevant to the question of whether specific performance should be awarded. *See Amick v. Hagler*, 286 S.C. 481, 485, 334 S.E.2d 525, 527 (Ct.App.1985) ("The fact that [the buyer] changed her plans about the use she intends to make of the property is of no consequence.").

unreasonable and (3) that causes prejudice." *Twelfth RMA Partners, L.P. v. National Safe Corp.,* 335 S.C. 635, 641, 518 S.E.2d 44, 47 (Ct.App.1999). Defendant argues she is able to demonstrate the prejudice element because she sold the lot adjacent to the Property after the sale to Plaintiff did not close. (*See* Deposition of Diane Austin p. 41, lines 4–5.) The contract for this subsequent sale was entered into on June 23, 2005 (Plaintiff's Exhibit A to Reply Mem. in Further Support of Plaintiff's Motion for Summary Judgment), and the sale took place on August 24, 2005, even though Plaintiff's attorney informed Defendant's attorney on June 1, 2005, that Plaintiff "intends to move forward with this transaction and acquire this property." (Plaintiff's Exhibit M.) Assuming, without deciding, that Defendant can establish prejudice, this court finds Defendant cannot establish unreasonable delay that caused prejudice.

The closing date for the sale of the Property was May 25, 2005, but as of this date, Wachovia had not signed a partial release of the Mortgage, and Plaintiff had yet to receive instructions on how to wire the funds for the property to Defendant. Plaintiff transferred the funds for the property to his attorney's escrow account on May 31, 2005 (Plaintiff's Exhibit J.) The following day, on receiving word that Defendant was cancelling the Contract, Plaintiff's attorney informed Defendant's attorney that Defendant bore the responsibility of providing documentation to Wachovia to secure the release and further stated, "Your offer to call this transaction off is equally unacceptable. [Plaintiff] intends to move forward with this transaction and acquire this property." (Plaintiff's Exhibit M.) Plaintiff's attorney delivered a letter via facsimile to Defendant's attorney on August 29, 2005; the letter stated that Plaintiff would file suit seeking specific performance if Defendant did not fulfill her contractual obligations. (Plaintiff's Exhibit R.) Plaintiff then filed suit on September 30, 2005.

Defendant has not demonstrated that the lapse of four months between the failed closing and the filing of the complaint constitutes unreasonable delay or neglect, nor has Defendant demonstrated the delay caused the alleged prejudice. Defendant entered into a contract to sell the adjacent lot on June 23, 2005, approximately three weeks after the failed closing. (Plaintiff's Exhibit A to Reply Mem. in Further Support of Plaintiff's Motion for Summary Judgment.) Defendant has thus failed to demonstrate the elements of laches.

### C. Attorney's Fees

■ The Contract authorized attorney's fees:

> Upon the failure of either party to comply with the terms hereof within the stipulated time, and after receipt of notice of said default with a ten (10) day right to cure, it is understood and agreed by and between the parties hereto that either party may proceed with all rights and remedies at law or in equity against the defaulting party. . . . In the event of any litigation commenced because of a default hereunder, the prevailing parties in such litigation shall be entitled to recover attorney fees and court costs from the non-prevailing parties.

(Plaintiff's Exhibit A ¶ 9.) Defendant did not contest this provision or address attorney's fees in her Memorandum in Opposition to Plaintiff's Motion for Summary Judgment. Generally, "attorney's fees are not recoverable unless authorized by contract or statute." *Seabrook Island Property Owners' Ass'n v. Berger,* 365 S.C. 234, 238, 616 S.E.2d 431, 434 (Ct.App.2005).

Here, the Contract authorized attorney's fees, and Plaintiff provided Defendant with ten days to cure. (*See* Plaintiff's Exhibit R.) Because Plaintiff is the prevailing party in this litigation, Plaintiff is entitled to recover attorney's fees and court costs pursuant to the Contract.

## CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Plaintiff's motion for summary judgment is **GRANTED.** Specific performance of the Contract is **GRANTED** requiring Defendant to convey marketable title to Plaintiff. Defendant is **ORDERED** to pay attorney's fees and court costs pursuant to the Contract.

**AND IT IS SO ORDERED.**